*In re* MARRIAGE OF KATHLEEN S. CROUCH, Petitioner-Appellant, and DONALD E. CROUCH, Respondent-Appellee.

Third District    No. 79-347

Opinion filed September 12, 1980.

ALLOY, J., specially concurring.

STOUDER, P. J., concurring in part and dissenting in part.

James D. Lucie, of Lucie, Heiser & Slater, of Bushnell, for appellant.

Lawrence J. Kwacala, of Flack, Kwacala & Murphy, of Macomb, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The Circuit Court of McDonough County dissolved the marriage of the petitioner-appellant, Kathleen S. Crouch, and the respondent-appellee, Donald E. Crouch, on September 18, 1978. The decree of dissolution awarded certain items of alleged nonmarital property to the respondent, divided the marital property between the spouses, and allowed the respondent a credit for the temporary support that had previously been ordered. The petitioner, Mrs. Crouch, has appealed from that portion of the dissolution decree that divided the nonmarital and marital property and claims the division was improper. Mrs. Crouch also appeals from the credit to her former husband of the temporary support by means of an offset against her award ordered by the court.

The petitioner first met Mr. Crouch at an art gallery in New York in early 1973, and he invited her to come work with him on his art projects in Macomb, Illinois. Mr. Crouch was employed as an art professor at Western Illinois University and owned and operated an art gallery. In early April of 1973 the petitioner arrived in Macomb, Illinois, and took up residence in one of the old out buildings at Mr. Crouch's art gallery and home. Soon thereafter she moved in and lived with Mr. Crouch in his home. They were ultimately married on August 21, 1973. Although the record contains considerable conflict as to the ownership of certain items of personal property

alleged to be the nonmarital property of Mr. Crouch, the trial court's ultimate decision that this disputed personal property was nonmarital is a fair interpretation of the conflicting evidence.

During their premarital cohabitation certain art objects, paintings, etc., were purchased for Mr. Crouch's business.

During that same time period of premarital cohabitation, and after the marriage Mrs. Crouch spent much of her time and energies in running the art gallery for her husband on a gratuitous basis. During the course of the marriage from August 21, 1973, to September 18, 1977, the petitioner was absent from their Macomb home on three separate occasions. These absences of Mrs. Crouch were for extended periods of time. The first absence was from August 1974 through January 1975, the second was from May of 1975 through June of 1975, and the third absence of Mrs. Crouch, although disputed as to duration, lasted for at least several months.

The trial court found specifically that the items in the husband's art gallery business which were purchased prior to the marriage consisted of property valued at $28,370 and included the Pearlstein painting, the Perlis painting and the Casas·Grande Serpent vessel, and granted that property to Mr. Crouch. The order of the trial court also found that Mrs. Crouch had performed certain work and helped with improvements on the nonmarital real estate of Mr. Crouch for which a value of $2,000 was determined. Against this credit of $2,000 the trial court allowed an offsetting credit in Mr. Crouch's favor of $1085 for temporary support paid to Mrs. Crouch.

■■ Mrs. Crouch has phrased the first issue on appeal as whether the trial court's division of the marital and nonmarital property is against the manifest weight of the evidence. The petitioner argues initially that the award of the nonmarital property to Mr. Crouch was error. Although the evidence is somewhat conflicting, the record clearly supports a finding by the trial court that the various art objects and personal property in question in Mr. Crouch's art gallery business were acquired prior to the marriage of the parties. Section 503(b) of the Illinois Marriage and Dissolution of Marriage Act in pertinent part provides:

> "All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage * * * is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." (Ill. Rev. Stat. 1977, ch. 40, par. 503(b).)

Property acquired by a party prior to the marriage is nonmarital property. (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(6).) The record quite clearly reflects

that the residence and art gallery were acquired by Mr. Crouch in 1965, long before the marriage to the petitioner. The purchases of various art objects in the art gallery including the Pearlstein painting, the Perlis painting, and the Casas Grande Serpent vessel were made prior to the marriage for the art gallery business of Mr. Crouch. These were properly found to be nonmarital property by the trial court. Mrs. Crouch has argued that she contributed to the purchases of those various items of personal property in her husband's business and worked without pay in his business during their premarital cohabitation and accordingly she claims that the increase in the business equity and inventory which occurred prior to the marriage should nevertheless be considered marital property. In support of her argument she relies upon the case of *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517. Her theory is that the various art objects and other business inventory acquired prior to the marriage were commingled with the other marital property acquired after the marriage, thus evidencing an intent to have the former property treated as marital property. The *Klingberg* case is very distinguishable from the facts of the case now before us. The commingled property in *Klingberg* was money in a joint bank account, while the alleged commingling in the case at bar was with clearly identifiable and traceable art objects which do not lose their individual identity upon remaining in the husband's business inventory after the marriage. We hold the disputed personal property here was originally nonmarital property and retained that status even after the marriage.

■■ ■ Mrs. Crouch also argues that part of the purchase price for the disputed art objects was paid after the marriage and therefore these objects should be considered marital property. We reject this argument. The trial court had before it the business inventory, the income tax depreciation schedule of the respondent, and Mr. Crouch's testimony that the various art objects were purchased and placed in his solely owned art gallery business prior to the marriage. Mrs. Crouch has not disputed that the art gallery business itself was a nonmarital asset of the respondent. The record clearly supports that the three major art objects, the Pearlstein painting, the Perlis painting, and the Casas Grande Serpent vessel were purchased and possessed in respondent's business inventory prior to the marriage. The checks in payment for these art objects were written on the business account, and in one instance the "Senufo Mask," which was purchased even prior to the first meeting of the parties, was exchanged as partial payment for the "Pearlstein painting." The testimony was hotly contested on the subject of ownership of the art objects in dispute. The trial court's finding that the disputed art objects were acquired in Mr. Crouch's business inventory prior to the marriage and hence acquired prior to the marriage is manifestly supported by the record. The judgment order of the trial court recited that:

"The court further finds that the value of all items acquired prior

to August 21, 1973 [the date of the marriage] by respondent amounts to $28,370.00 and is to be the separate property of respondent and is non-marital property, and that said property is to specifically include the Pearlstein Painting, the Perlis Painting and the Casas Grande Serpent Vessel piece."

Admittedly some small portion of the purchase price was paid out of the business after the marriage. Such a fact has been held to be insufficient to cause nonmarital property to be transmuted to marital property. (*Davis v. Davis* (Mo. App. 1976), 544 S.W.2d 259; *cf. In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332 (nonmarital property acquired with gift); *Hull v. Hull* (1979), 591 S.W.2d 376 (nonmarital property acquired by gift).) However, the argument of Mrs. Crouch is based upon a partnership theory that survived into the marriage or alternatively upon a commingling of the business inventory after the marriage. We have rejected Mrs. Crouch's commingling theory. We also reject her partnership theory. No partnership tax return was filed for the year of the acquisition of the disputed art objects nor thereafter so far as we can determine. We do not believe a finding that the disputed assets are nonmarital in this case will lead to inequitable results where a different rule may have been applied if the disputed assets had not been in the husband's business. The language of the statute provides for property "acquired" prior to the marriage to be nonmarital property. Using the usual and customary meaning of the word "acquired" we conclude that the disputed property in this case was acquired in Mr. Crouch's business prior to the marriage.

■■ The petitioner also claims that prior to their marriage Mr. Crouch told her she was a partner in his art gallery business, and that she actively participated as a partner in helping with the business during their premarital cohabitation. She further contends that her services to Mr. Crouch were valuable and advantageous to his business and were not intended to be gratuitous even though they were only then living together. She also emphasizes that she worked in the art gallery during their live-in relationship to her detriment, having left college and abandoned her own career to help Mr. Crouch in his career. While we do not dispute the value of Mrs. Crouch's work or the detriment she may have suffered therefrom, we cannot legally recognize her theory of her rights against Mr. Crouch. Mrs. Crouch has predicated her claims against Mr. Crouch in the context of a dissolution of marriage proceeding and has based her claims upon their premarital cohabitation relationship. While we might acknowledge that she was both a domestic associate and business associate of Mr. Crouch during their live-in relationship the arguments she has used are strikingly similar to those of the so-called palimony cases. Our supreme court has expressly declined to sanction such premarital property rights even when very persuasive arguments were presented. (*Hewitt v. Hewitt* (1979), 77 Ill.

2d 49, 394 N.E.2d 1204.) The heart of the petitioner's claims to the disputed property is that she was in some form a partner in the art gallery business and in equity and good conscience should be compensated for her work benefiting the business prior to their marriage. Her plight, however compelling, has no available remedy under the Illinois Marriage and Dissolution of Marriage Act.

The trial court had before it considerable evidence including an inventory of the art gallery property which contained purchase and sale dates, as well as invoices and tax records. Although somewhat conflicting, the evidence presented allowed for a fair and reasonable classification of the disputed property as nonmarital. Accordingly, we will not upset the decision of the trial court and conclude that the finding of the trial court with regard to this disputed nonmarital property is manifestly supported by the evidence contained in the record.

■■ The petitioner next argues that the trial court's division of the marital property was inequitable and contrary to the manifest weight of the evidence. In reviewing the division of the marital property, we are guided, as was the trial court, by section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), which provides:

> "(c) In a proceeding for dissolution of marriage or declaration of invalidity of marriage, or in a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:
>
> (1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;
>
> (2) the value of the property set apart to each spouse;
>
> (3) the duration of the marriage;
>
> (4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;
>
> (5) any obligations and rights arising from a prior marriage of either party;
>
> (6) any antenuptial agreement of the parties;
>
> (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

The trial court considered all of these factors. Of particular significance is the short duration of the marriage, which was interrupted at several intervals by Mrs. Crouch's absence. During these absences she removed her belongings and the art gallery business records to Florida. She admitted to opening a bank account in her maiden name and depositing checks in it written to her husband for sales of merchandise which he had restrictively indorsed for deposit in the business account. Mrs. Crouch was in good health, considerably younger than Mr. Crouch, was about to graduate from college and certainly had employable skills. While in Florida she was employed as an administrative assistant at a salary of $14,000 per year. The trial court further quite properly considered Mr. Crouch's obligation of child support from his prior marriage, which required him to pay $200 per month. The trial court also found that the value of the marital property acquired during the marriage amounted to $8,624, one-half of which was to be received by Mrs. Crouch; that there were two vehicles of approximately equal value, and that Mrs. Crouch was to have the automobile, and Mr. Crouch the pickup truck; that except for pieces of inventory acquired before marriage, Mrs. Crouch was to receive the furniture and furnishings contained in the domicile, and that Mr. Crouch was to receive the Casas Grande Serpent vessel piece, the Perlis painting, and the Pearlstein painting. Having considered the relevant factors set out in section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), we conclude that the apportionment of the marital property by the trial court was in just proportions and is supported by the manifest weight of the evidence.

■■ Mrs. Crouch's second issue is that the trial court erred in allowing the husband a setoff for the temporary maintenance he paid to her from the award owed to the wife of $2,000 for work she performed on his nonmarital real estate. Although the petitioner has found no authority for her argument, she strenuously contends that the $2,000 award to her was too low and allowing a setoff against the award for temporary maintenance he had already paid to her was somehow improper. The trial court's decision in this respect does not appear to be erroneous. The petitioner has not shown how this part of the judgment was in any way improper. At most her argument is an attempt to challenge the apparent denial of temporary or permanent maintenance to her. We believe the trial court was authorized to enter the specific terms of the judgment reflecting an award to one party

offset by a credit to the other spouse for money paid subsequent to their separation. Further, on the merits, the order does not appear to be an abuse of discretion nor to be against the manifest weight of the evidence.

For the reasons stated the judgment of the Circuit Court of McDonough County is affirmed.

Judgment affirmed.

Mr. JUSTICE ALLOY, concurring specially:

I am writing this special concurrence for the purpose of aiding in the understanding of the issue in the instant case. While the dissent of Justice Stouder has much to commend it as a logical analysis, the weight of authority is in accord with the opinion submitted by Justice Barry which states in relevant part:

> "Admittedly some small portion of the purchase price was paid out of the business after the marriage. Such a fact has been held to be insufficient to cause nonmarital property to be transmuted to marital property. (*Davis v. Davis* (Mo. App. 1976), 544 S.W.2d 259, * * *.)"

The *Davis* case referred to is one of a line of Missouri cases which state that "[t]he time of payment of a major part of the purchase price of the * * * assets, i.e., after the marriage, would not alter the [nonmarital] status of the property." Missouri has for some time had a version of the Uniform Marriage and Divorce Act, similar to Illinois' current Marriage and Dissolution of Marriage Act. Missouri's act defines marital property as property acquired subsequent to the marriage. Illinois, at section 503(a) (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)), also defines marital property as property acquired subsequent to the marriage. By logical construction, under Missouri law, property acquired prior to the marriage is the party's "own." The Illinois statute reinforces this point by including among the exceptions to marital property "(6) property acquired before the marriage." (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(6).) These exceptions to marital property are called "non-marital property."

The leading Missouri case on the question at issue is *Cain v. Cain* (Mo. App. 1976), 536 S.W.2d 866. The *Cain* case is quite similar to Justice Stouder's hypothetical in his dissent. The court in the *Cain* case reached the opposite conclusion proposed by the Stouder dissent. The husband had purchased a 78-acre tract, known as "the farm," prior to the marriage. At that time, he purchased the property with a 15% down payment. Subsequent to the marriage, the mortgage indebtedness of 85% was paid off with marital funds. The court noted that Missouri, as a State which follows the "lien theory" of mortgages, recognized the passage of title to the husband at the time the purchase and mortgage were entered into, *i.e.*, prior to the

marriage. The court also noted that a State's recognition of the "title theory" of mortgages would not change the result as between the husband and wife. The court stated:

> "This court concludes * * * that the fact that some of the payments on the mortgage were made with money which itself was marital property does not alter or affect the status of the farm as [the husband's] separate property. * * *
>
> 'Property is classified as separate or community when it is acquired. As used in this connection the word "acquired" contemplates inception of title.' 15 Am. Jur. 2d Community Property §22, p. 836. [See also 41 C.J.S. *Husband & Wife* §483, at 1023 (1944).]" 536 S.W.2d 866, 870-71.

As can be noted from the quotation set forth, the court turned for precedent to the community property jurisdictions. While the Illinois Marriage and Dissolution of Marriage Act does not create "community property" as such (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382), there is a valuable analogy between "marital property" under the Uniform Marriage Act and "community property" for the purpose of analyzing some issues.

While the community property jurisdictions recognize the mortgaged property as separate property, "[w]here property is purchased with community and separate funds, and the acquisition nevertheless is held to belong to the separate estate, the community has a claim against the separate estate for the amount of its contribution to the purchase price, and such a claim is a charge or lien on the property so acquired." One way of enforcing such an equitable lien would be to denominate the property "marital property" and then "divide [it] in just proportions considering all relevant factors, including: * * * the contribution * * * of each party in the acquisition, preservation, or depreciation or appreciation in value" of the property. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1).) This is the apparent approach adopted by the dissent of Justice Stouder. The Missouri court, in the *Cain* case, chose instead to deal with the farm as the husband's separate property, in accordance with the weight of authority in the community property States. Because the parties had sufficient marital property, the court in *Cain* did not place a lien on the farm, corresponding to the wife's contribution, but instead considered this contribution in its apportionment of marital property between the parties. The Illinois statute specifically allows for this solution. The marital property is to be divided "in just proportions considering all relevant facts, including: * * * the contribution * * * of each party in the acquisition, preservation, or depreciation or appreciation in value, of the *marital and non-marital property.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1).) Because the statute clearly contemplates the contribution of one spouse to the acquisi-

tion and preservation of the nonmarital property of the other spouse, it cannot be said that any contribution by one spouse to the obligation owed by the other spouse automatically "transmutes" the encumbered property into marital property.

That the same ultimate result may be reached by denominating the property as marital and apportioning according to the respective contribution of the spouses under section 503(c)(1), or by denominating it as nonmarital, yet recognizing the nonowner spouse's contribution toward its acquisition when dividing the remaining marital property under section 503(c)(1), is recognized in both the majority and dissenting opinions in *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332. As I read the Illinois statute, it was not contemplated that the courts should surrender the basic equitable power vested in the courts in making equitable distributions of property in dissolution of marriage cases. This is notably clear from the provisions of section 503(c), where the court is directed to divide property in just proportions considering all relevant facts, including the contribution of each party in the acquisition, preservation, or depreciation or appreciation in value of the marital and nonmarital property. There is, therefore, no lack of authority in the court to do justice in cases such as we are now considering without indulging in any procedure which would transmute property by simple reason of payments reducing a lien owed by the other spouse. Section 503(c) of the Illinois Act simply codifies the powers of the court to apply equitable principles to dispositions of property of a spouse, whether owned separately or jointly. The power of the courts to do equity in such cases is not limited by classification of the property as marital or nonmarital.

For the reasons stated, therefore, I concur in the determination of Justice Barry in this cause.

Mr. PRESIDING JUSTICE STOUDER, concurring in part, dissenting in part:

Although agreeing with the rest of the majority opinion, I must dissent from that portion which holds that the disputed art objects are nonmarital property. The majority claims that because the art objects were acquired prior to the marriage, they were nonmarital property at the time of purchase and remained that way after marriage despite the fact that marital property was used to pay part of the purchase price. I agree that, having been purchased prior to marriage, the art objects were originally nonmarital property of Mr. Crouch. However, I believe that when marital funds were used to pay part of the purchase price this constituted a commingling of nonmarital and marital property which transmuted the nonmarital property into marital property.

Such an approach is mandated by the objective of the legislature in

passing the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) The objective of the legislature in categorizing property as marital and nonmarital was to allow for an equitable distribution of property upon termination of the marriage. *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382.

To hold as the majority does—that nonmarital property stays nonmarital despite the contribution of marital funds—will all too often lead to an inequitable result. An example is easily envisioned. Suppose a man buys a $100,000 house prior to marrying and has paid $10,000 at the time he marries. Over the next 20 years the remaining $90,000 is paid off by the married couple. If there is a subsequent dissolution, the holding of the majority would require a finding that the house is clearly traceable and identifiable and therefore, despite a commingling of marital and nonmarital funds, it would remain nonmarital property. The husband would receive the house and the wife would receive nothing, notwithstanding her contribution over 20 years to paying off the $90,000 mortgage. Such a result is manifestly inequitable.

To insure an equitable division of property it is necessary to regard nonmarital property that has been commingled with marital property as having been transmuted into marital property. The rationale for this was set forth in *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517. In *Klingberg* the court noted that a spouse may by agreement, express or implied, or by gift, transmute an item of nonmarital property into marital property.

> "Thus, the failure to properly segregate nonmarital property by commingling it with marital property evinces an intent to have the former property treated as part of the marital estate. [Citation.] Absent evidence to the contrary, as here, treating nonmarital property in this manner will result in its transmutation to marital property." *Klingberg*, 68 Ill. App. 3d 513, 516-17, 386 N.E.2d 517, 520.

Treating property in this manner will not result in inequitable distributions of property. In the previously mentioned example regarding the house, the property would be divided between the parties taking into account their respective contributions. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) The husband's original $10,000 would be taken into account as well as both parties' contribution to the remaining $90,000 so as to insure an equitable distribution.

In attempting to distinguish *Klingberg* from the present case, the majority both misinterprets its holding and misapplies it to the facts of this case. The majority states that *Klingberg* differs from the instant case in that the commingled property in *Klingberg* was money in a joint bank account which was not traceable, while the property in the instant case is art objects

which are clearly identifiable. However, the holding in *Klingberg* does not rest on whether or not the property in question is identifiable. It rests on the idea that by commingling nonmarital and marital property, there is an intent to have it considered marital property. It is irrelevant whether the property being commingled is fungible.

Further, the question in applying *Klingberg* to the instant case is not whether art objects bought prior to marriage were commingled with objects bought after marriage but whether the art objects bought before the marriage were paid for with marital funds. It is undisputed that marital funds were used to pay for the Pearlstein painting, the Perlis painting and the Casa Grande Serpent vessel. With regard to those pieces there has been a commingling of nonmarital and marital funds to purchase them. This evinces an intent to have them treated as marital property. In the absence of any evidence to the contrary, they must be considered marital property.

The majority emphasizes that these objects were business inventory and therefore must be considered nonmarital property. Such an analysis leads to inconsistent results in this case. The trial court found that the business inventory purchased after the marriage was marital property, and the majority does not disturb that part of the decision. With regard to that property, the majority apparently feels that whether or not the property is business inventory is not determinative of its status as marital or nonmarital property. Yet when dealing with property purchased before marriage, the majority says that because it is business inventory, the property must be considered nonmarital. Such an approach cannot be justified by any reading of the statute or case law. I believe the fact that the property is business inventory is irrelevant in determining its status as nonmarital or marital property. Thus, simply because the disputed objects were business inventory is not evidence that the respondent intended to keep the property nonmarital.

The majority's emphasis on the art objects being business inventory is similarly misplaced in dealing with the problem of when the property is acquired. The majority holds that a different rule as to time of acquisition might be utilized to prevent inequitable distributions if property were not business inventory. However, if the property is going to be considered nonmarital because it is business inventory, then the time of acquisition is irrelevant. Conversely, if the time of acquisition is determinative, then the fact that the property is business inventory is irrelevant.

There is one other problem with the majority's holding. Adopting the majority's analysis regarding commingling would lead to the anomalous result of transforming marital property into nonmarital property. In this situation, marital funds would be used to increase equity in nonmarital property and one spouse would end up with nothing to show for her contribution. I do not believe the legislature intended to create a loophole

from which such manifestly inequitable results could occur. Therefore I believe that where marital funds are used to pay for property obtained prior to marriage, the property is transmuted into marital property. This will ensure an equitable distribution of property. In the instant case, the art objects should have been considered marital property and divided according to the relative contributions of each spouse.