In re MARRIAGE OF MADELINE D. HUGHES, Petitioner-Appellee, and THOMAS S. HUGHES, Respondent-Appellant.

Fifth District    No. 5—86—0240

Opinion filed September 24, 1987.

John J. Kurowski, P.C., of Belleville (John J. Kurowski, of counsel), for appellant.

Sprague, Sprague & Ysursa, of Belleville (John R. Sprague, Jr., of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

On October 11, 1985, the circuit court of St. Clair County entered an order for the dissolution of the marriage between petitioner Madeline Davitz Hughes and respondent Thomas S. Hughes. From this order, respondent appeals and raises the following issues: (1) whether the trial court properly awarded petitioner a right of reimbursement of nonmarital property; (2) whether the trial court's division of respondent's pension was an abuse of discretion; (3) whether the trial court's maintenance award was appropriate; and (4) whether the trial court had the authority to impose a lien on respondent's nonmarital property for payment of lump sum maintenance. We reverse and remand for further proceedings.

From April 1978 to July 21, 1980, the date of petitioner and respondent's marriage, the parties lived together in Oxnard, California. During most of that time in California, petitioner worked as an eligibility interviewer for the Ventura County Public Agency Social Service earning $8,500 per year and as an alcohol counselor for Ventura County earning $7.50 per hour. After a tubal pregnancy operation, and at the request of respondent, petitioner quit her full-time job as an. eligibility interviewer. She continued to work as an alcohol counselor and also as a crisis counselor throughout 1979.

The parties lived in respondent's home, which he had purchased prior to the parties' relationship. Before petitioner moved in with respondent, she sold her house in Oxnard. Not long after petitioner moved in with respondent, the parties filled out and signed a record of confidential marriage after having participated in a wedding ceremony. However, without petitioner's knowledge respondent failed to

file the record and the parties, on July 21, 1980, went through the same procedure again but at that time the record was filed. During the period after petitioner moved in and the second record of confidential marriage, petitioner made purchases totalling $1,585.53 for various household items and contributed $2,500 to the equity in the house for a total of $4,085.53.

In 1980, the parties moved to Illinois and took up residence with petitioner's parents. With the assistance of petitioner's trust fund set up for her children from a previous marriage, they purchased a home in Freeburg. They initially purchased the land and later built a home on it without the assistance of a construction contractor.

Respondent performed some of the carpentry work, dug trenches, and put up wallboard. Petitioner did some of the painting, planted the grass and cooked meals for the carpenters. Petitioner's father put in the furnace, air conditioning, gutters and leveled the land. Petitioner's friends, family, siblings, and parents also worked on the house. Petitioner's brother allowed the parties to buy material for the house at cost through his business. The unfinished portions of the house are assessed at $6,600.

In April 1982 the parties financed the building of the Illinois home, with petitioner's parents co-signing the loan and placing their farm as collateral because the parties did not have a contractor for the construction. Mortgage payments were $433 per month, and after October 1, 1985, the payment increased to $447 per month because of a variable interest rate. At the time of the September 3 and 4, 1985, hearing, the balance on the mortgage was approximately $50,000.

When the parties moved to Illinois, petitioner quit working and mainly stayed at home doing the domestic chores. In 1983, petitioner worked at home baby-sitting and received a paid internship at a Veteran's Administration home. Petitioner also began to attend Washington University. By December 1985, petitioner completed all course requirements for bachelor and master's degrees in social work.

Respondent has been employed as a computer programmer working at Scott Air Force Base earning between $38,000 and $39,000 per year. He pays $800 a month for his living expenses. Respondent had stopped paying the $100 per week for maintenance which the court ordered him to pay. Respondent rents out the home in Oxnard for $550 per month and after the mortgage company deducts the loan payment he receives $140.

On October 11, 1985, the court entered a handwritten order finding that the parties were married on July 21, 1980. The trial court divided the property at issue as follows. The court awarded petitioner

the home in Freeburg ($40,000 equity) and respondent the home in Oxnard ($70,000 to $96,000 equity). Further, the court ordered respondent to pay the mortgage on the Freeburg home through December 1985. The court also ordered respondent to pay petitioner $450 per month from January through June 1986 for maintenance and $20,000 for rehabilitative maintenance. Petitioner received the Harbor Point Lake St. Louis lot, worth between $12,000 and $13,500, and respondent the Patio Cove Lake St. Louis lot, worth between $6,000 and $8,000. The court also awarded petitioner the right of reimbursement in the amount of $4,085.53 for her contribution to the California home.

The court further found respondent in arrears in the amount of $1,800 for the temporary maintenance payments ordered by the court. The court ordered respondent to pay the balance of the parties' Visa, Mastercard, counseling center and all other outstanding debts incurred by the parties prior to separation. The court further awarded petitioner 50% of respondent's nondisability pension earned during the marriage.

After this order, respondent filed a post-trial motion. The court denied the post-trial motion on March 13, 1986. On March 27, 1986, the court found respondent in contempt for failure to pay the maintenance and expenses ordered by the court. The court then entered an order for withholding income from respondent's check because of his failure to comply with the court's previous orders.

■ The issue before this court is whether the trial court abused its discretion in awarding the right to reimbursement, in dividing the rights in respondent's civil pension and in awarding periodic and gross maintenance, and for placing a lien on the property in California and ordering the sale of the California home to satisfy the court's order. The test on review is whether the trial court, in the exercise of its discretion, acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 319, 453 N.E.2d 866, 870.) The trial court's discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion. 117 Ill. App. 3d 313, 453 N.E.2d 866.

The first item this court must review is whether the trial court erred in awarding petitioner a right of reimbursement from respondent's nonmarital property under section 503 of the Illinois Marriage

and Dissolution of Marriage Act, hereinafter referred to as the Act. (Ill. Rev. Stat. 1985, ch. 40, par. 503.) Respondent argues that the trial court's finding is against the manifest weight of the evidence because the contributions were not made "during the marriage." Respondent also argues that the Act applies only to the relationship of the parties during the marriage and not before.

Section 503(c) provides that where nonmarital and marital property are commingled and the contributed property thereby loses identity, the contributed property's classification is transmuted to the estate receiving the contribution. In order to compensate for those contributions which are transmuted, section 503(c) provides rights of reimbursement for the contributing estates and applies only to those transfers in which the contributed property loses its identity. It also applies to situations in which a spouse contributes personal efforts to nonmarital property, which contribution must be traceable by clear and convincing evidence and personal efforts must be significant and result in substantial appreciation of the nonmarital property.

■ The operative word in analyzing a case under section 503 is "spouse." This section contemplates the transfer of property of the various estates during the pendency of a valid marriage. In this case, the trial court found that the parties were married as of July 21, 1980. Prior to July 21, 1980, the parties were cohabiting as man and wife without legal recognition under the laws of Illinois or California. Further, it is well established in Illinois that common law marriages are not recognized and during the time of the live-in relationship the wife or husband acquires no premarital property rights. Therefore, there is no remedy available under the Act. (See *In re Marriage of Crouch* (1980), 88 Ill. App. 3d 426, 430-31, 410 N.E.2d 580, 583.) However, an argument for putative spouse could have been made (see *In re Marriage of Flores* (1981), 96 Ill. App. 3d 279, 281, 421 N.E.2d 393, 395), but was not, and thus, it is waived on appeal (87 Ill. 2d R. 341(e)(7)).

In *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 394 N.E.2d 1204, the court recognized that when the legislature enacted the Act, it reiterated the long held public policy against private contractual alternatives to marriage and against the grant of mutual property rights to knowingly unmarried cohabitants. In this case, this court will not contravene public policy disfavoring the grant of mutually enforceable property rights to knowingly unmarried cohabitants. The parties did not have a legally recognized marriage until July 21, 1980. Thus, the trial court abused its discretion when it granted a right of reimbursement for the time prior to the parties' legally recognized marriage.

All of her contributions were paid prior to the date of the legally recognized marriage, as was her $2,500 check to respondent when she initially moved in with respondent. Also, the trial court did not find petitioner as a putative spouse. The trial court's only finding regarding the marriage is that the parties were married on July 21, 1980.

Petitioner relies on *Spafford v. Coats* (1983), 118 Ill. App. 3d 566, 455 N.E.2d 241, for her argument that she is entitled to the right of reimbursement. However, *Spafford* is distinguishable from this case. The petitioner in *Spafford* did not seek recovery on rights closely resembling those arising from conventional marriage or on rights founded on proof of cohabitation or appropriate performance of domestic services; therefore, the court allowed petitioner's claim under appropriate restitutionary remedies preventing unjust enrichment in property disputes between the cohabitants. In this case, petitioner's claims have been brought under the Act and she seeks right of reimbursement under the Act. Petitioner's claims arise under the Act, and her claim also involves the proof of cohabitation and performance of domestic duties as well as other nondomestic duties. For this court to allow recovery based on such proof, this court would have to contravene the established public policy. Thus, this court finds that petitioner is not entitled to the right of reimbursement.

The next area at issue is the property division regarding respondent's pension. Respondent argues that the trial court abused its discretion when it failed to place a valuation on respondent's pension.

■ It is well established that pension rights, whether matured, vested or nonvested, contributory or noncontributory, are property under section 503 and are capable of valuation and division. (*In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 473, 442 N.E.2d 557, 559.) That pension is subject to division to the extent it accrues during the marriage. *In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 847, 408 N.E.2d 418, 421.

■ In *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 448 N.E.2d 545, the respondent argued that the " 'trial court lacked information about the present value of the respondent's contingent pension ***', and it 'overlooked the requirement to obtain the present value of the respondent's contingent pension ***.' " (114 Ill. App. 3d 47, 54, 448 N.E.2d 545, 550.) The *Smith* court found that respondent's argument was untenable because it is not "the trial court's obligation to obtain the value of the pension rights. Rather, the trial court must value the pension rights based upon the evidence presented by the parties." (114 Ill. App. 3d 47, 54, 448 N.E.2d 545.) The *Smith* court stated further that "it was the parties' responsibility to present the

requisite data to the trial court." (114 Ill. App. 3d 47, 54, 448 N.E.2d 545.) The *Smith* court did not remand for a redetermination because it found that "[r]eviewing courts cannot continue to reverse and remand dissolution cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so." (114 Ill. App. 3d 47, 54, 448 N.E.2d 545.) Although respondent uses the *Smith* argument, this court finds as did the *Smith* court that respondent's argument is untenable. Respondent had adequate opportunity to introduce the value of the pension. However, since this court remands this cause for further proceedings regarding the remaining issues, the parties have an opportunity to present evidence of the pension's value to the trial court.

The next area at issue in this appeal is the maintenance award of both lump sum and periodic payments. Respondent argues that the Act does not permit such an award and the award was against the manifest weight of the evidence. This court agrees.

■ An award of maintenance is within the sound discretion of the trial court and will not be disturbed on appeal unless it constitutes an abuse of discretion or is against the manifest weight of the evidence. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 33, 500 N.E.2d 612, 619.) In determining whether the award was proper, this court must review the award in light of the statutory factors set out in section 504 of the Act.

Section 504 provides in part:

"(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, made without regard to marital misconduct and may be in gross or for fixed or indefinite periods of time and the maintenance may be made from the income or property of the other spouse after consideration of all relevant factors, including:

(1) [T]he financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***." Ill. Rev. Stat. 1985, ch. 40, par. 504.

■ Under the former Divorce Act the trial court could not award both periodic and lump sum alimony. (Ill. Rev. Stat. 1975, ch. 40, par. 19; see Ill. Ann. Stat. 1985, ch. 40, par. 504, Supplement to Historical and Practice Notes, at 126 (Smith-Hurd 1986 Supp.).) However, this court in its research and its review of the briefs does not find any case law permitting maintenance awards in gross and periodic payments in the same case. The only directing standard is whatever "the court deems just" and the one recognized rule is that the preferred

form of alimony is by periodic payments and an award in gross is appropriate only in exceptional circumstances. *Lamp v. Lamp* (1980), 81 Ill. 2d 364, 374, 410 N.E.2d 31, 35.

■■■ It is well established in Illinois law that the issue of maintenance is interrelated with the distribution of the marital property. (*In re Marriage of Banach* (1986), 140 Ill. App. 3d 327, 336, 489 N.E.2d 363, 369.) Maintenance is inappropriate where a spouse has sufficient property or a combination of property and income to satisfy his or her reasonable needs. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 38, 411 N.E.2d 238, 242.) Although "reasonable needs" is equated with the items that comprised the parties' lifestyles during the marriage (*In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 658, 409 N.E.2d 321, 326), those needs are limited where the marriage is of a very short duration. *In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 307, 432 N.E.2d 958, 962.

■■ In view of the established law in Illinois, this court finds that the trial court's award of both periodic and lump sum maintenance was against the manifest weight of the evidence. Petitioner received a much greater proportion of the marital property than did respondent. Further proceedings are needed to establish a fair division but not necessarily an equal division of marital property and marital debt. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37-38, 411 N.E.2d 238, 241-42.) In light of the record's failure to reveal otherwise, this court finds that the trial court's division of the marital property was against the manifest weight of the evidence and remands this cause for further proceedings consistent with this court's findings.

When the trial court granted the maintenance order, it placed a lien on respondent's nonmarital property in California and ordered that the property be sold as early as possible so that part of the proceeds could be used to pay for petitioner's maintenance in gross. In view of our findings in the previous issue, this court need not reach a decision on this issue.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed and remanded for further proceedings consistent with this court's findings.

Reversed and remanded.

KASSERMAN* and HARRISON, JJ., concur.

---

*Justice Kasserman replaces Justice Jones, who retired after the cause was taken under advisement.