*In re* MARRIAGE OF THELMA KATHRYN FRAZIER, Petitioner-Appellee, and WILLIAM TUCKER FRAZIER, Respondent-Appellant.

Fifth District    No. 5—86—0662

Opinion filed January 5, 1988.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellant.

Mark C. Scoggins, of Crowder & Scoggins, Ltd., of Columbia, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

On April 5, 1983, the circuit court of St. Clair County entered a judgment which dissolved the marriage of petitioner, Thelma Kathryn Frazier, and respondent, William Tucker Frazier, and distributed the parties' property between them. From that judgment respondent appealed. We then reversed and remanded with instructions to revaluate respondent's interest in his insurance agency and to redistribute the parties' marital property. (*In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 466 N.E.2d 290.) On remand another hearing was conducted, and the circuit court entered an order in accordance with our instructions. Respondent has now appealed for a second time. We affirm.

On this appeal, respondent has submitted a lengthy brief raising numerous issues for our review. After examining this brief, petitioner's brief, and respondent's reply, and upon consideration of the contentions of the parties at oral argument, we have concluded that there are, in fact, only two basic issues we must decide: (1) whether the circuit court erred in its valuation of respondent's insurance agency and (2) whether the circuit court abused its discretion in allocating the parties' marital property. We shall consider each of these issues in turn.

Respondent's insurance agency was described in our previous opinion in this case. No purpose would be served by repeating that description here. We note again only that if respondent's agency agreement were terminated, he would become entitled to termination benefits. If termination were to occur after respondent turned 65 and after he had completed 20 years of service as an agent, he would also be entitled to extended termination benefits, to be paid after primary termination benefits had ceased, until the end of his life. 125 Ill. App. 3d at 475, 466 N.E.2d at 292.

In the order from which this appeal is taken the circuit court determined that the agency has no fair cash market value with the exception of the termination benefits. Respondent does not challenge this finding. What he does dispute is the circuit court's additional finding that the termination benefits have a present value of $75,709.65.

■■ Respondent's objection to this figure is threefold. First, he argues that the discount rate used in making the present value computation was arbitrary. The record shows, however, that the rate adopted by the circuit court, 10%, was amply supported by expert testimony. Second, respondent asserts that the present value computa-

tion did not take into account the taxes which would be due on the termination benefits when they were paid. The flaw in this argument is that the court was not required to adjust its present value computation for taxes. Section 503(d)(11) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(11), provides only that "the tax consequences of the property division upon the respective economic circumstances of the parties" are among the relevant factors to be considered by the court. Testimony as to such tax consequences was presented to the trial court here, and there is no basis for concluding that they were not properly considered.

Finally, respondent contends that the termination benefits have no value at all because he is not yet eligible to receive them. This is simply wrong. The evidence presented to the trial court, including the testimony of respondent himself, unequivocally established that respondent would, in fact, be eligible to receive such benefits now if his agency were terminated. What respondent does not yet qualify for are *extended* termination benefits, but these benefits were not included in the court's present value computation.

The distinction between primary and extended term benefits is immediately apparent upon even a cursory review of the record. So obvious is this distinction that we do not believe that it could be overlooked through mere inadvertence. Yet, in his main brief, his reply brief, and even at oral argument, respondent's attorney, John R. Sprague, made arguments to this court as if the distinction did not exist. Even after the error was pointed out by counsel for petitioner, respondent's counsel persisted, without explanation, in misrepresenting the evidence on this issue. We believe that such conduct comes perilously close to violating the professional obligation imposed upon Mr. Sprague by Rule 1—102 of the Code of Professional Responsibility (107 Ill. 2d R. 1—102). Mr. Sprague is therefore admonished that if he engages in such conduct before this tribunal again, we may have no recourse but to refer the matter to the proper disciplinary authorities. See 107 Ill. 2d R. 63(B)(3).

We turn then to respondent's second basic claim of error; namely, that the circuit court abused its discretion in distributing the parties' marital assets. In its order, the circuit court found that the following items constituted marital property: the parties' marital home, the termination benefits from the insurance agency, a condominium in Belleville, $53,000 in income generated during the marriage from a fund which petitioner had received after the death of her first husband and before she married respondent (referred to herein as the Tedford Fund), a 1978 Honda, a 1973 Lincoln, and a 1975 Mercedes.

The marital home has a value of $110,000 and equity of $88,000. It was awarded to petitioner. Petitioner also received the $53,000 in income from the Tedford Fund; the 1978 Honda, valued at $1,000; and the 1973 Lincoln, valued at $2,500. Respondent, for his part, was awarded the 1975 Mercedes, worth $5,000; the condominium, which has an equity of $11,000; and the termination benefits from the insurance agency which, as we have noted, have a present value of $75,709.65. At the same time, however, respondent was ordered to pay petitioner $5,500, representing one-half of the equity in the condominium, and an additional $37,854.82, representing one-half of the insurance agency termination benefits. Under this distribution, the total value of the marital property awarded to petitioner is $187,854.82, while the total value of the marital property awarded to respondent is $48,354.83.

■ Pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)), a trial court is directed to divide marital property upon dissolution of the marriage in "just proportions," taking into consideration 11 enumerated factors. The Act does not require that the marital property be divided into equal shares. (*In re Marriage of Guntren* (1986), 141 Ill. App. 3d 1, 5, 489 N.E.2d 1120, 1122.) So long as the trial court has considered all of the factors enumerated in section 503, its decision will not be disturbed absent an abuse of discretion. (*In re Marriage of Flemming* (1986), 143 Ill. App. 3d 592, 595, 493 N.E.2d 666, 668.) A reviewing court will find an abuse of discretion in the division of marital property only where no reasonable person would have so allocated the property. *In re Marriage of Mayzner* (1986), 144 Ill. App. 3d 645, 650, 494 N.E.2d 615, 619.

In this case, the record established that petitioner and respondent were married in 1970. Petitioner had previously been married for 22 years, but that marriage ended when her husband died in 1969. Petitioner had two children from her former marriage.

Shortly after their marriage, the parties purchased what was to be their marital home for $62,500. A $35,000 down payment was made on the property, which was placed in joint tenancy, using the proceeds from the sale of a house which petitioner had owned before marrying respondent. This left a debt on the property of $27,500. Respondent made the mortgage payments using money he earned after the marriage. He also paid for maintenance and repair, utilities, taxes, and insurance on the house. By the time of trial, a mortgage balance of approximately $22,000 remained. Petitioner was required to assume this obligation when the trial court awarded the house to her.

The condominium, which the court found to be marital property, was purchased in 1977 for $43,000. The down payment was made using funds borrowed by respondent against various insurance policies he owned. The mortgage payments were defrayed using the rent collected from respondent's mother, who had a lifetime lease on the premises. By the time of trial, approximately $32,000 was still owed on the property. Respondent was ordered to bear this debt when the court awarded the condominium to him.

Petitioner is 65 years old. Although she once taught school, she has not worked since 1952 and was not employed during the marriage. She did, however, serve as a housewife and mother. While the record shows that petitioner participated in many clubs and recreational activities and had maid service one day a week, it also indicates that she helped entertain and supervise respondent's children from his former marriage, she kept house, and she cooked, cleaned, and discharged other household responsibilities.

For the first five years of the marriage, respondent, who is six years younger than petitioner, was an agency manager for State Farm Insurance. During this period, he earned a total of approximately $197,000. In 1975, however, his employment as a manager was terminated. Thereafter, respondent was made a sales agent for the company in Granite City. The agency assignment he received was larger than was customary. Testimony established that this agency was and would be very successful. Between 1976 and 1980, respondent's income from the agency was approximately $171,000.

Respondent seeks to characterize petitioner as a woman of leisure who did nothing to justify the award to her of 50% of the termination benefits he was eligible to receive as a sales agent. Yet, evidence was adduced which demonstrated that petitioner, whose former husband was a State Farm executive and who personally knew various key figures in the company's hierarchy, was instrumental in helping respondent obtain the assignment of his agency. In addition, petitioner helped respondent foster business, entertain prospective clients and business associates, and maintain his office.

The Tedford Fund, which petitioner received when her former husband died, was found to be worth $144,849. An oral trust was imposed on the income from the fund for the benefit of petitioner's children by her former husband. During the course of the parties' marriage, the fund generated approximately $127,000 in income, but by the time of trial petitioner had only approximately $53,000 of this additional accumulation left. This suggests that petitioner expended approximately $74,000 of her own money ($127,000 minus $53,000) dur-

ing the marriage.

The Tedford Fund, found by the trial court to be nonmarital property, was awarded to petitioner. At the same time, the court awarded the following nonmarital property to respondent: the proceeds of the sale of a building worth $17,600; a land trust with an equity of $11,000; an oil interest valued at $300; a man's diamond ring (no value fixed); an antique diamond ring (no value fixed); and a boat, trailer and motor worth a total of $1,735. A woman's ring was awarded to petitioner. Three insurance policies, none of which had any cash value, were awarded to respondent. The court allowed each party to keep his or her respective clothes and personal property, and made a detailed list of specific items respondent was allowed to retain. This list included jewelry, artwork, tools, furnishings, sports and photographic equipment, as well as a sizeable gun collection. Many of the items listed were antiques or family heirlooms. The remaining "household furniture and effects and items incidental to the operation of the household" were found to be the property of petitioner. Finally, the court ruled that any debts associated with any of the real or personal property awarded were to be borne by the party who had received the particular property. No antenuptial agreement existed between the parties, they had no minor children, and no support or maintenance was awarded.

■ There is nothing in the record to suggest that the trial court failed to consider the statutory factors enumerated in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)). Considering all of the foregoing circumstances, we cannot say that no reasonable person would have allocated the parties' marital property as did the trial court here. Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

WELCH and KARNS, JJ., concur.