*In re* MARRIAGE OF VERNON THACKER, Plaintiff-Appellant, and JOANN THACKER, Defendant-Appellee.

Fifth District    No. 5—87—0659

Opinion filed June 28, 1989.

CHAPMAN, J., concurring in part and dissenting in part.

Rosemary L. Berkemann and Robert E. Wells, Jr., both of Pessin, Baird, Belsheim & Wells, of Belleville, for appellant.

Crowder & Scoggins, Ltd., of Columbia, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Vernon Thacker, appeals the distribution of certain property awarded by the circuit court of St. Clair County in his action for dissolution of marriage to defendant, JoAnn Thacker. We reverse and

remand.

Vernon and JoAnn were married in June of 1982 and separated three years later. No children were born of the marriage, although Vernon has two children by prior marriages, one of whom lived with the parties during their marriage. Both Vernon and JoAnn work full time. Prior to the parties' separation, JoAnn also served as a part-time secretary without compensation, averaging 10 hours a week, for Thacker Painting, Inc.

Vernon argues on appeal the trial court erred in classifying certain assets as marital property. Specifically, Vernon contends the parties' residence, stock in Thacker Painting, Inc., and a bedroom set and coffee and end tables are all nonmarital property which rightfully belong to him. We turn first to the stock in Thacker Painting, Inc.

In 1979, prior to the parties' marriage, Vernon started his own painting company, Thacker Painting, which he operated as a sole proprietorship. In 1984, after their marriage, Vernon incorporated the business. At the time of incorporation, Vernon's accountant recommended that 20 shares of stock in the business be issued to JoAnn so that in the event of Vernon's death Thacker Painting, Inc., could remain in operation. Thacker Painting, Inc.'s 1984 tax return indicates that 20 shares were transferred to JoAnn. JoAnn, however, never received any of the stock certificates. Vernon testified he never intended to give her 20 shares of the stock nor intended for her to have any right to control the operation of the business. JoAnn contributed no income to and did not become liable for any debts of Thacker Painting, Inc. JoAnn testified, however, she purchased the very first ladder for the predecessor Thacker Painting. She also continued to work part time for the business without pay after incorporation until the parties' separation.

The trial court, in distributing the parties' assets, classified Thacker Painting, Inc., as marital property. Vernon contends the stock is nonmarital property. He argues he merely exchanged one nonmarital asset (Thacker Painting) acquired prior to the parties' marriage for another nonmarital asset acquired shortly after the marriage. JoAnn, however, asserts Thacker Painting was a marital asset owned by both parties prior to incorporation; consequently, Thacker Painting, Inc., as its successor, is also marital property. We cannot accept JoAnn's argument. Clearly, Thacker Painting, Inc., is nonmarital property.

Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 503) sets forth the guidelines to be consulted in determining whether property is marital. Sub-

sections (a)(6) and (a)(2) clearly state property acquired before the marriage and property acquired in exchange for property acquired before the marriage is nonmarital. Vernon started Thacker Painting three years before the parties' marriage. As such, it was property acquired before the marriage belonging solely to Vernon. It is true that JoAnn aided the fledgling business by purchasing its first ladder and contributing secretarial work, but she never exerted any control over the operation of the business, never claimed any income from the business on her individual tax returns prior to the parties' marriage and never claimed to be a joint owner or partner prior to incorporation. JoAnn's contributions do not entitle her to any premarital property rights in Thacker Painting under the Illinois Marriage and Dissolution of Marriage Act. (See *In re Marriage of Hughes* (1987), 160 Ill. App. 3d 680, 685, 513 N.E.2d 1203, 1206; *In re Marriage of Crouch* (1980), 88 Ill. App. 3d 426, 430-31, 410 N.E.2d 580, 583.) And, her contributions after the marriage, standing alone, were not substantial enough to convert the business into a marital asset. See *In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 478, 466 N.E.2d 290, 294, *appeal after remand* (1988), 164 Ill. App. 3d 207, 517 N.E.2d 775; *In re Marriage of Pancner* (1982), 111 Ill. App. 3d 546, 549, 444 N.E.2d 653, 655.

■■ ■ Our discussion, however, cannot end here, for in 1984, after the parties' marriage, Vernon incorporated his business. If Vernon had issued all stock to himself, clearly this exchange of assets would fall under subsection (a)(2). Vernon, however, declared on the 1984 tax and incorporation forms that JoAnn was a stockholder. Under subsection (b) of the Act, all property acquired by either spouse after the marriage, including nonmarital property transferred into some form of co-ownership between the spouses, is presumed to be marital property, regardless of title. (See Ill. Rev. Stat. 1985, ch. 40, par. 503(b).) Vernon, however, has rebutted this presumption. First, the designation of ownership on tax returns in and of itself is too ambiguous to establish that a spouse intended to convey a gift to the marriage. (See *Pancner*, 111 Ill. App. 3d at 549, 444 N.E.2d at 655.) Second, JoAnn was to receive 20 shares of stock on the advice of the parties' accountant to keep the business in operation should Vernon die. JoAnn never received the 20 shares of stock. More importantly, Vernon never intended to give her any stock. Vernon also never intended for JoAnn to exercise any control over the business, and she never attempted to do so. Under such circumstances, Thacker Painting, Inc., is not marital property. (See *In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 205, 443 N.E.2d 1089, 1094.) Vernon simply exchanged one non-

marital asset for another, regardless of title. The trial court erred in classifying it otherwise. Consequently, we must remand this cause for a reclassification and redistribution of the parties' assets.

We must also remand this cause for further proceedings because of the trial court's erroneous handling of the parties' residence.

In 1981, prior to the parties' marriage, Vernon purchased a home in Belleville, Illinois. In 1983, Vernon sold this property, realizing $10,400 in equity. Vernon applied the $10,400 as a down payment on a new home in Belleville. The names of both parties appear on the mortgage note and on the title of the new house. Prior to incorporating Vernon's business, all mortgage payments were made by Vernon out of Thacker Painting's checking account. After 1984, the mortgage payments were made out of a joint checking account which consisted primarily of Vernon's funds.

The trial court awarded Vernon the right to purchase JoAnn's interest in the residence. If Vernon failed to exercise this right within the allotted period of time, the house was to be sold with the proceeds divided equally between the parties. Vernon argues on appeal that the residence is his nonmarital property because he merely exchanged his nonmarital equity in the first residence for nonmarital equity in the new house. Any presumption of gift is rebutted, Vernon claims, by his testimony he took title to the property in joint tenancy with JoAnn because he does not have a will. JoAnn counters that all of Vernon's nonmarital funds used to acquire the residence were gifts to the marital estate.

Section 503(c)(1) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(1)) provides that when marital and nonmarital property is commingled, resulting in a loss of the identity of the nonmarital estate, the commingled property is transmuted into marital property. Here, Vernon used his equity in the first residence to purchase a new home titled in both parties' names, thereby commingling the properties so as to transmute his equity into marital property. (See *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 179, 429 N.E.2d 465, 467; *In re Marriage of Mayzner* (1986), 144 Ill. App. 3d 645, 649, 494 N.E.2d 615, 618.) Consequently, the residence was properly classified as marital. Section 503(c)(2) provides, however, that the estate which contributed assets to another estate shall be reimbursed from the estate receiving the contribution provided that such contribution is traceable by clear and convincing evidence and was not made as a gift to the marital estate. (See Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(2); see also *Hughes*, 160 Ill. App. 3d at 685, 513 N.E.2d at 1206; *In re Marriage of Guerra* (1987), 153 Ill.

App. 3d 550, 555, 505 N.E.2d 748, 751-52.) Factors to be considered in determining whether a party has rebutted the presumption of gift under such circumstances include the size of the gift relative to the entire estate; when the property was purchased; and who paid the purchase price, made improvements, paid the taxes, and exercised control and management over the property. (See *Guerra*, 153 Ill. App. 3d at 556, 505 N.E.2d at 752.) Here, approximately one-fourth of the purchase price for the property, which also represents one-third of Vernon's entire estate, came from Vernon's nonmarital funds. All of the mortgage payments prior to 1984 were made through Vernon's business which was operated from the property. In addition, Vernon provided the majority of the physical labor and finances used to make major improvements to the property. Such evidence, along with Vernon's testimony as to his original intent in titling the property in joint names, rebuts the presumption that his original investment in the residence constituted a gift to the marital estate. Vernon, therefore, is entitled to reimbursement for the nonmarital contribution consisting of the $10,400 down payment applied to the purchase of the residence.

■ Finally, Vernon contends a bedroom set and a coffee and end table set were erroneously classified as marital property. We agree. Vernon's cancelled checks for these items establish they were purchased prior to the parties' marriage and therefore constitute nonmarital property. JoAnn admitted as much as to the bedroom set at trial and was discredited as to her testimony pertaining to the tables as the alleged replacement set was purchased after the parties' separation. The trial court therefore needs to readjust its distribution of property with regard to these items also.

■ Vernon also raises arguments pertaining to the trial court's apportionment of marital debt and to the order requiring him to pay a portion of JoAnn's attorney fees. We need not address these issues because of our disposition of Vernon's other contentions. Our reversal as to the property distribution necessarily will require the trial court to reexamine the distribution of debt and the issue of attorney fees in light of the adjusted financial resources of the parties. See *Guerra*, 153 Ill. App. 3d at 559, 505 N.E.2d at 754; *In re Marriage of Harmon* (1985), 133 Ill. App. 3d 673, 676-77, 479 N.E.2d 422, 425. See also *In re Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 588, 407 N.E.2d 189, 192, *appeal after remand* (1981), 97 Ill. App. 3d 641, 423 N.E.2d 283.

For the aforementioned reasons we reverse the judgment of the circuit court of St. Clair County and remand for further proceedings

consistent with this opinion.

Reversed and remanded with directions.

GOLDENHERSH, J., concurs.

JUSTICE CHAPMAN, concurring in part and dissenting in part:

I agree with the majority's overall classification and distribution of the property in this cause; however, I disagree that the $10,400 down payment applied to the purchase of the residence should be reimbursed to Vernon as a nonmarital contribution.

As the majority points out, Vernon used his equity in the first residence to purchase a new home titled in both parties' names, thereby commingling the properties so as to transmute his equity into marital property. (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(1); *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 179, 429 N.E.2d 465, 467; *In re Marriage of Mayzner* (1986), 144 Ill. App. 3d 645, 649, 494 N.E.2d 615, 618.) However a residence purchased during the marriage and owned by both spouses, even if one spouse has furnished all of the consideration for the residence out of nonmarital funds, will be presumed "in fact" as marital property, absent convincing rebutting evidence. (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 225, 422 N.E.2d 635, 638.) The presumption of marital property is overcome upon a showing by clear, convincing and unmistakable evidence that the property was a gift. (*In re Marriage of Deem* (1984), 123 Ill. App. 3d 1019, 1021, 463 N.E.2d 1317, 1320.) The trial court found that Vernon did not meet his burden and that finding is not against the manifest weight of the evidence.

Several factors have been deemed significant where a spouse who has paid the purchase price for property seeks to overcome the common law presumption of a gift. In addition to the parties' testimony, factors include the size of the gift relative to the entire estate; when the property was purchased; who paid the purchase price, made improvements and paid the taxes; and who exercised control and management over the property. (*In re Marriage of Guerra* (1987), 153 Ill. App. 3d 550, 555, 505 N.E.2d 748, 752.) It is true that approximately one-fourth of the purchase price for the residence came from Vernon's nonmarital assets. However, this factor by itself is not enough to overcome the presumption of a gift. Furthermore, it is undisputed that the residence was purchased during the marriage, thereby supporting the presumption that Vernon intended to make a gift to the marital estate.

The majority stresses that prior to 1984 all of the mortgage payments were made from the Thacker Painting checking account, but all mortgage payments made after the incorporation of Thacker Painting in 1984 came from a joint checking account. In addition, the majority fails to give credence to the Illinois Marriage and Dissolution of Marriage Act, which dictates that the parties' income during the marriage is considered marital property. Classifying the earnings of one spouse made during the marital relationship as being separate and distinct from the earnings of the other spouse is inconsistent with the Act. (Ill. Rev. Stat. 1985, ch. 40, par. 503(a).) Although the mortgage payments made prior to 1984 came from the Thacker Painting checking account, the moneys represented "marital income" regardless of which bank account it was deposited into. The mortgage payments paid after 1984, coming from the parties' joint checking account, also consisted of "marital income," which was income earned by both spouses.

The majority places great emphasis on the presumption that Vernon provided the majority of the physical labor used to make improvements to the property. This presumption is misplaced. Testimony at trial indicated that both JoAnn and Vernon exerted physical efforts in improving the property. Of course, if the majority suggests that the labor and time Vernon spent on the home during the marriage was somehow a contribution of a nonmarital asset, then the logical conclusion would be that the time, labor and efforts of the wife were also contributions of nonmarital assets. This is clearly not the intent of the Illinois Marriage and Dissolution of Marriage Act. The majority fails to recognize that while the wife did not advance any money toward the acquisition of the property she did perform services, and the presumption of a gift has not been overcome. *Bruin v. Bruin* (1966), 72 Ill. App. 2d 51, 58, 219 N.E.2d 68, 72.

Furthermore, Vernon's testimony as to his original intent in titling the property should not be given the weight the majority gives it, since obviously the trial court did not give credence to Vernon's testimony. The fact that the residence was taken in joint tenancy raised a presumption of gift to the marital estate. (*In re Marriage of Flemming* (1986), 143 Ill. App. 3d 592, 597, 493 N.E.2d 666, 670.) Vernon testified that he titled the residence in joint tenancy because he did not have a will, but desired to provide for the disposition of his estate. He stated that he at no time intended to make a gift to JoAnn or to the marital estate. The trial judge obviously did not accept Vernon's explanation and he is in the best position to judge the credibility of the witnesses.

The trial court's division of property will be reversed only where "no reasonable man would take the view adopted by the trial court." (*In re Marriage of Pancner* (1983), 111 Ill. App. 3d 546, 550, 444 N.E.2d 653, 656.) Given the fact that the parties here were the only witnesses to testify, the trial court's determination as to credibility was central to its adjudication of the issue. It is well known that credibility issues are reserved to the province of the trial court, which had the opportunity to hear the testimony and observe the demeanor of the witnesses. (*In re Marriage of Nagel* (1985), 133 Ill. App. 3d 498, 502, 478 N.E.2d 1192, 1194.) When the evidence is considered as a whole, I do not find the trial court's decision holding that Vernon did not overcome the presumption of gift to be an abuse of discretion.