*In re* MARRIAGE OF THELMA KATHRYN FRAZIER, Petitioner-Appellee, and WILLIAM TUCKER FRAZIER, Respondent-Appellant.

Fifth District   No. 5—83—0293

Opinion filed June 8, 1984.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellant.

Crowder & Scoggins, Ltd., of Columbia, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

In a judgment entered in the circuit court of St. Clair County, the marriage of petitioner Thelma Kathryn Frazier and respondent William Tucker Frazier was dissolved and the parties' property was divided between them. No maintenance was awarded and no child support is involved. From this judgment, the respondent appeals, challenging the court's disposition of property.

The respondent is a State Farm insurance agent. The court classified his agency as marital property and awarded it to the respondent. Relying upon the testimony of a professor of accounting who ascertained the discounted present value of the respondent's future earn-

ings until retirement, the court valued the agency at $144,000. It ordered the respondent to execute a $40,000 note, payable over five years at 10½% interest, as her share of that asset.

The trial court did not err in considering the agency as marital property, inasmuch as it was acquired during marriage. (*In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 408 N.E.2d 96.) However, the respondent's primary argument is that the court erred in valuing that interest. He contends that a State Farm agent has a more tenuous proprietary interest in his agency than does an insurance broker (*In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006), or the owner of an incorporated insurance agency (*In re Marriage of Reib* (1983), 114 Ill. App. 3d 993, 449 N.E.2d 919). Methods appropriate for valuing a brokerage or insurance corporation, he reasons, are thus inappropriate for valuing a State Farm agency and result in excessive valuation. According to the respondent, the capitalization of earnings method used by the expert to determine the worth of the agency produced an unrealistically high figure for his interest in the agency. He argues that the court wrongly permitted the expert to apply that method in this case, even though such calculations may be warranted in evaluating a brokerage or insurance corporation.

The respondent began his association with State Farm as an agent in 1961. Before his marriage to the petitioner in 1970, the respondent became an agency manager, with some loose supervisory authority over approximately 10 agents. In 1976, he assumed an existing State Farm agency in Granite City. He did not pay for such items as accounts receivable or lists of policyholders, because those items are the property of State Farm. Nonetheless, the accounts present in the office when it was taken over by the respondent were assigned to him. By that assignment, the respondent became obligated to service those accounts, and, in return, receives a commission from them.

As a State Farm agent, the respondent receives no salary. He is paid a percentage of premiums received by State Farm from his accounts. That percentage commission varies according to the type of policy. He must provide his own office equipment and pay for his own expenses, including employee salaries and rent. He is given full control of his daily activities and his contract with State Farm describes him as an independent contractor. Presently the respondent's office is staffed by him and two full-time secretaries.

The respondent's agency agreement does not grant him an exclusive territory, and in fact, there are five other State Farm agents in Granite City. But, a State Farm agent must handle State Farm insurance exclusively. State Farm may, after written notice to the agent,

transfer any automobile policy to the account of another State Farm agent when the policyholder makes a *bona fide* request in writing. Either State Farm or the agent may terminate the agency agreement upon written notice to the other, in which case State Farm's property must be returned. The agreement provides that "neither the Agreement nor any interest thereunder can be sold, assigned, or pledged *** ."

The respondent does not have a retirement plan with State Farm. If the agreement is terminated, he becomes entitled to termination benefits. The formula for calculating those benefits need not be explained, but they are based upon commissions on "personally produced" policies and continue for five years after termination. In the event that termination would occur after the respondent turns 65, and after 20 years of service as a State Farm agent, he would be entitled to extended termination benefits, to be paid after primary termination benefits had ceased, until the end of his life. At trial, the respondent estimated that his termination benefits were worth less than $30,000. He was 53 at that time and was not yet eligible for extended termination benefits.

The sole witness to testify as to the value of the agency was Dr. James P. Jennings, professor of accountancy at St. Louis University. Dr. Jennings used what is known as the "capitalization of earnings technique" in arriving at the worth of the agency. He noted that this is a broadly accepted method of determining value. Its premise is that the value of any income producing resource is not the historic cost of assets, nor is it the historic cost of assets minus liabilities. It is instead the discounted present value of the future stream of earnings, estimated by the use of recent past earnings. See Jennings, *Issues in Valuing Closely Held Businesses*, 37 J. Mo. B. 243 (1981).

This technique is best illustrated by example. At trial, Dr. Jennings started with the figure of $162,491, which represents respondent's net before-tax income from the insurance agency for the years 1976 through 1980. This amount was gleaned from respondent's tax returns. Dividing by five gives an average annual net before-tax income of $32,498. Dr. Jennings estimated that the tax on that income would be 30%, and thus the respondent's average annual net after-tax income for the specified five-year period is $22,748.

Dr. Jennings assumed that the respondent, 53 years old at the time of trial, would work for 12 more years. Multiplying respondent's average annual net after-tax income by the 12 years which he was projected to work and reducing that amount to its present cash value, assuming an interest rate of 12%, Dr. Jennings arrived at the figure

of $144,491. It is apparently this value which the trial court assigned to the business. Dr. Jennings calculated an alternate value of $133,998, using a different amount as the respondent's net before-tax income from the agency between 1976 and 1980. The other assumptions and techniques used in the first calculation remained the same in the second analysis.

Although this accounting method may provide an accurate measure of the value of a business for some purposes, there is a fallacy in using it to value marital property to be divided upon dissolution. Marital property, as it is defined in section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503), must be valued as of the date of dissolution of the marriage. (*In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 60, 446 N.E.2d 1198, 1202.) This is so that spouses may be granted an interest in property which is acquired during the marriage or increases in value by the infusion of marital funds or efforts, without receiving an interest in assets of the other spouse which are acquired or appreciate after dissolution. (See *In re Marriage of Goldstein* (1981), 97 Ill. App. 3d 1023, 423 N.E.2d 1201.) Marital property rights cannot inure in property acquired after a judgment of dissolution of marriage (Ill. Ann. Stat., ch. 40, par. 503(a)(3), Hist. and Prac. Notes, at 462 (Smith-Hurd 1980)), and the same is true of the appreciation of marital property occurring after that judgment.

Dr. Jennings purported to place a value on the agency as of the time of trial, and the method he used to do that was his reduction of the respondent's future earnings to present cash value. But, because of the nature of the respondent's business, those calculations include as marital property labor which will be performed after dissolution. The respondent's agency is not like shares of stock, which will produce income without further efforts by the owner. Nor is it akin to a sole proprietorship or partnership, which can be converted into assets which will produce income without such efforts. The respondent may not rest on his laurels and receive the future stream of commissions projected by Dr. Jennings. He must send out renewals, forward premiums to State Farm, answer questions about policies, process claims, advertise to let policyholders know of the continuing nature of the business, attend seminars and study brochures to keep abreast of new developments in insurance, among other efforts, all to retain the patronage of the accounts currently held by him.

█ In valuing the agency at the discounted present value of the respondent's expected future earnings, Dr. Jennings ignored the fact that those earnings will be due in large part to the respondent's activ-

ity following dissolution. In failing to reduce the value of the agency to account for that activity, the court effectively classified as marital property the results of the respondent's future efforts to maintain his current accounts. Furthermore, the twin assumptions, implicit in Dr. Jennings' calculations, that the respondent's office expenses and commissions from policies written or assigned during marriage will remain constant, seem to be unwarranted. These shortcomings produced, in our opinion, a grossly excessive valuation of the agency as a marital asset. This cause must therefore be remanded for revaluation and redistribution of the value of the agency in accordance with the views expressed herein.

In most of the respondent's remaining arguments, he does not challenge the court's classification or valuation of the parties' property. He instead argues that the court's distribution of that property was inequitable. Inasmuch as the equity of that distribution depends upon the value of the agency, the respondent should present his position to the trial court, as well as his argument that the court failed to apportion certain marital debts.

The respondent insists that the court erroneously classified his equitable interest in a land trust as marital property and valued it at $11,500. The respondent purchased a one-half interest in the trust for $5,000 during the marriage. That money was obtained from a note at the Bank of Belleville which, in turn, was purchased with funds from a savings account in the name of the respondent and his mother before the parties' marriage. The interest in the land trust is in the name of the respondent only. The trust holds legal title to an apartment building which was purchased for $140,000 in 1976 and on which there was $117,000 in outstanding indebtedness as of the time of trial. The owner of the other half interest in the trust paid $10,000 or $15,000 for it. The respondent explained that the difference between his investment and that of the other owner is that he manages the property. As a manager, the respondent must collect rent, institute legal action against delinquent tenants, see that repairs are made and pay for insurance on the building.

Contrary to the position taken in the petitioner's brief, the respondent's testimony was not vague as to the origin of his investment in the trust. That money is certainly nonmarital property. The question is then whether that property became nonmarital by virtue of its investment in the trust. The respondent testified that no money acquired since his marriage to the petitioner was invested in the trust. Thus, it cannot be said that the respondent has commingled marital funds with his original investment.

■ The petitioner asserts that the respondent's services during the marriage as manager of the apartment building should act to convert his interest in the trust into marital property. Property acquired in exchange for property acquired before the marriage is nonmarital (Ill. Rev. Stat. 1983, ch. 40, par. 503(a)(2)), but may become marital if it increases in value because of the efforts of the parties (*In re Marriage of Lee* (1981), 87 Ill. 2d 64, 430 N.E.2d 1030), rather than solely because of inflationary factors (*In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305). Here, the respondent made no capital improvements to the apartment building, and his services as manager were not shown to have added to the value of the building. Those services, including the payment of insurance premiums, were primarily conservative in nature, and thus do not transform the interest in the land trust into marital property. (See *In re Marriage of Holman* (1984), 122 Ill. App. 3d 1001, 462 N.E.2d 30.) To hold otherwise would convert nonmarital property into marital property by the simple act of preserving it. The respondent's interest in the trust must therefore be considered a nonmarital asset. The court's valuation of that interest at $11,500 is supported by the record and is not undermined by the respondent's opinion that the apartment building "was a losing proposition."

Finally, the respondent argues that the court erred in failing to award him certain personal property acquired before marriage and allegedly still in the possession of the petitioner. The list of that property is far too long to discuss in detail, but it consists basically of furniture, household effects and some antiques. Some of these items—a gun collection, marble top table, secretary desk, music box, stereo and personal effects, including tools—were specifically awarded to the respondent. If the petitioner retains such items, the respondent's remedy is to seek enforcement of the judgment in the trial court. Other requested items—silverware and a portable generator—were, by the admission of the respondent, acquired after marriage. Still other items—a fuel tank and a metal file cabinet—were in the possession of the respondent and were not awarded to the petitioner. Most of the remaining property now sought by the respondent is furniture which was in an apartment lived in by him before marriage. However, the petitioner testified that that furniture was sold with the apartment, and thus it is no longer available to distribute.

There are certain items which, according to the testimony of the parties, were acquired by the respondent before marriage, are still in the possession of the petitioner, and were not awarded to the respondent. They are a Zenith TV console, several antique swords, an

antique lamp and a Mah-Jongg set. These items should be awarded to the respondent as his nonmarital property.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed and this cause is remanded for revaluation of the respondent's interest in his State Farm agency and redistribution of the parties' martial property considering that new valuation and our reclassification of certain assets as nonmarital.

Reversed and remanded.

JONES and KASSERMAN, JJ., concur.