**William H. SMITH, Appellant,**

v.

**Debra J. SMITH, Appellee.**

No. 01–90–00826–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 2, 1992.
Rehearing Denied Aug. 26, 1992.

Sidney Levine, Sealy, for appellant.

John K. George, Houston, for appellee.

Before DUGGAN, DUNN and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

The primary question before this Court is whether the trial court abused its discretion in the valuation and the division of the community estate upon divorce. We find that it did and we reverse.

Debra Smith (the Wife) and William Smith (the Husband) were married in 1972. During most of the marriage, the Husband was a licensed, certified respiratory therapist and the Wife worked primarily as a homemaker. Two children were born during the marriage. In 1976, the couple moved from Houston to Columbus. In 1978, the Husband executed a contract with Columbus Community Hospital to provide respiratory therapy as an independent contractor, and later executed a similar contract with a hospital in Weimer. In addition to servicing the two hospitals, the Husband provided rental home health care equipment to the general public and consulting services to another respiratory care provider. Most of his business outside of the hospital resulted from hospital referrals.

The Husband did not operate his business as a corporation but as a sole proprietorship under the business name of Respiratory Care Services. No income tax state-

ments were filed for the business; the business income was reported on a profit and loss statement filed as part of the joint income tax return for the Smiths. The joint tax returns reported the Husband as self-employed.

From 1972 through 1987, the Smiths enjoyed what the Wife described as a good marriage. In 1988, the Wife began to notice a change in the Husband's attitude and suspected he was seeing another woman. When initially confronted, the Husband denied having an affair and became angry. When later confronted, the Husband ultimately admitted an adulterous relationship, explaining to the Wife that she had taken no interest in his hobby, flying, and he had found someone who did. The Husband told her he cared very much for the other woman and did not want to give her up.

The Wife sued the Husband for divorce, alleging adultery and insupportability. After a non-jury trial, the court granted a divorce, provided for the conservatorship and support of the two children, and divided the estate. The trial court valued the Husband's business, excluding goodwill, at $100,000 and found that an unequal property division in the Wife's favor was appropriate because of a disparity of earning power and the admitted and unrepentant fault of the Husband.

## 1. The Wife's expert

In point of error two, the Husband argues the trial court erred in admitting the testimony of the Wife's expert regarding the valuation. The Husband contends that the expert's appraisal method, as a matter of law, should not be accepted as valid and cites a case from another jurisdiction, *In re Marriage of Frazier*, 125 Ill.App.3d 473, 80 Ill.Dec. 838, 841, 466 N.E.2d 290, 293 (1984).

In valuing an insurance agency, the trial court in *Frazier* used the value calculated by an expert relying on a method similar to the one used in the present case. 80 Ill.

Dec. at 841, 466 N.E.2d at 293. The *Frazier* appellate court reversed, stating the method produced a "grossly excessive valuation." *Id.* The court reasoned that the method did not reduce the value for future efforts of the spouse. *Id.*

Here, the expert reached a value of $675,000. The trial court, however, valued the business at $100,000, less than one-sixth the expert's appraisal. In addition, nothing in the record suggests the trial court relied solely on the testimony of the Wife's expert.

■ In the alternative, the Husband asserts the appraisal should not have been admitted because it did not exclude good will. He relies on *Nail v. Nail*, 486 S.W.2d 761, 764 (Tex.1972). In *Nail*, the trial court made a finding of fact that the value of the medical practice included the good will. *Id.* at 762. Here, the trial judge made a findings of fact in which he said he excluded good will in making the final valuation of the business.[1]

In spite of the trial court's assertion that he excluded good will, this case is analogous to *Nail*. In *Nail*, the supreme court noted that the accrued good will

> did not possess value or constitute an asset separate and apart from his person, or from his individual ability to practice his profession. It would be extinguished in event of his death, or retirement, or disablement, as well as in the event of the sale of his practice or loss of his patients, whatever the cause.

*Nail*, 486 S.W.2d at 764. Here, as in *Nail*, the value of the business depended entirely on whether the husband could continue working, and was not an asset separate and apart from his person. The value of the business "would be extinguished in event of his death, or retirement, or disablement, as well as in the event of the sale of his practice or loss of his patients, whatever the cause."

We sustain point of error two.

---

1. It is difficult to understand how the trial court could have excluded good will from his valuation of the business. The Wife's expert, who valued the business at $675,000, testified that he could not identify a value for good will. The trial judge said he excluded good will, but he had nothing before him to identify what part of the Wife's expert valuation was good will.

## 2. Business valuation

In point of error one, the Husband argues the trial court's valuation of the business was not supported by either legally or factually sufficient evidence and, thus, it was an abuse of discretion. In reviewing legal insufficiency points, the reviewing court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex. 1988). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Wilson v. Klein Indep. School Dist.,* 817 S.W.2d 371, 374 (Tex.App.—Houston [1st Dist.] 1991, no writ).

The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by these same standards. *Pizzitola v. Galveston County Central Appraisal Dist.,* 808 S.W.2d 244, 246 (Tex.App.—Houston [1st Dist.] 1991, no writ). In reviewing factual insufficiency points, the reviewing court must examine all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). After considering and weighing all of the evidence, we will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ). As an appellate court, we cannot substitute our opinion for that of the trier of fact and reach a different conclusion. *Glockzin,* 760 S.W.2d at 666.

Both the Wife and the Husband testified that in 1988 he told the Wife that if anything happened to him, she should sell the business to another individual for $72,000, to be paid over a period of three years, or let an employee run it for one-half of the profits.

The Husband testified that up until 1988, he had contracts to service two local hospitals, one in Columbus and one in Weimer. The contract with the Columbus hospital was for a four-year term. Under that contract, the Husband was paid a maximum of $6,400 a month, from which he was required to pay an employee and furnish equipment and services to the hospital. The contract with the Weimer hospital was terminated a month before the trial because the Husband was not able to get to Weimer within the time specified by their contract, 15 minutes. At trial, the Husband said he had receivables of $11,000.

The Wife called an accounting expert to provide the court with a valuation of the Husband's business. The expert reviewed three years of their personal income tax returns and financial records. To arrive at the valuation for the business, the expert determined the income from the business for four years (he estimated the amount for 1989), from which he subtracted the tax liability to reach that year's after tax income (he estimated the amount for 1989). He then added the after tax income for the four years, and divided that figure by four, to arrive at an average after-tax income of $68,846.[2] Finally, the expert multiplied the average after tax income by a factor of 9.818 (the present value of an annuity of $1 for 20 years at 8% return) to calculate the present value of the business at $675,930. The expert explained his assumptions for the formula: He assumed the Husband is 40 years old and will work until he is 60,

---

**2.** The after-tax incomes used by the expert were: 1986—$73,118; 1987—$61,737; 1988—$57,667; 1989—$82,942. The expert did not have an income tax return for 1989, and merely estimated the amounts for that year, which resulted in $116,000, the highest of the averages. It is also interesting to note that the trend from 1986 to 1988 was an annual loss of income (from $73,-118 to $57,667) except for the last year which

the expert estimated at $82,942; none of the years with records, 1986–1988, provided an after-tax income as high as the one the expert estimated without the benefit of records. The after-tax average income for 1986 through 1988 was $64,174; if the 1989 estimate of income is included, the average for 1986 through 1989 was $68,846.

and that 8% is a conservative rate of return. The expert described his method as an estimate of the present value of average annual earnings on an annuity basis. The expert testified that he is not familiar with the Husband's type of business and did not have any comparable sales of similar businesses. He said he did not interview the Husband, he did not inspect the facilities, and did not see the equipment. In determining the value of the business, he said he assumed the assets were not of any consequence and the entire value of the business was based on the earning capacity. The expert admitted on cross-examination that his valuation was merely an evaluation of the income generated by the Husband.

The Husband also called an expert to discuss the value of the business. He testified that he owns a similar business and is familiar with the Husband's business. He said that the Husband's business is entirely dependent on the contract with the hospital, and without it, his referrals for home care would eventually cease. He said there is no walk-in business for oxygen; it is a matter of prescriptions from doctors. The expert testified that in his opinion the business would not sell for more than the hard assets (the equipment and the receivables). He testified that the Husband's present clients are on oxygen and will expire. When asked if anyone would be interested in purchasing the contract with the Columbus hospital, he said the contract was too fragile to purchase because it was dependent on a personal relationship with the doctors and it represents only one customer.

 We hold that the Wife's expert presented evidence of the Husband's *personal* future earning capacity; he did not provide testimony about the value of the business. His testimony was based on matters personal to the Husband (his life expectancy; the amount earned in past years projected over his work lifetime), and did not include any consideration of the business (its assets, receivables, or comparable sales of similar businesses). A

spouse is not entitled to a percentage of his or her spouse's future income. A spouse is only entitled to a division of property that the community owns at the time of the divorce. *See McBride v. McBride*, 256 S.W.2d 250, 255 (Tex.App.—Houston 1953, no writ) (a husband has no legal duty to support a former wife by paying alimony).

 The only admissible evidence of value of the business was the testimony that the Husband valued it at $72,000 in 1988. This evidence is both legally and factually insufficient to support the trial court's finding of a valuation of $100,000.

We sustain point of error one.

3. Community property division

 In point of error four, the Husband argues the trial court abused its discretion in its division of the community estate. The Texas Family Code affords the trial court wide latitude and discretion in dividing the community estate of the parties in a divorce suit.[3] *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex.1982). We will not disturb the trial court's exercise of discretion without a clear showing of abuse of discretion. *Id.; Patt v. Patt*, 689 S.W.2d 505, 507 (Tex.App.—Houston [1st Dist.] 1985, no writ). The trial court, however, does not have unlimited discretion. *Patt*, 689 S.W.2d at 507. The division of property must not be so disproportionate as to be inequitable, and the circumstances must justify awarding more than one-half to one party. *Thomas v. Thomas* 525 S.W.2d 200, 202 (Tex.App.—Houston [1st Dist.] 1975, no writ).

In applying *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex.1981), this Court recognized the following factors as justification for an unequal division:

(1) the nature of the property;
(2) the relative earning capacities and business experience of the spouses;
(3) educational background of the parties;
(4) size of separate estates;

---

**3.** Tex.Fam.Code Ann. § 3.63 (Vernon Supp.1992) directs the trial court to order a division of the estate of the parties in a manner that it deems just and right, having due regard for the rights of each party and any children of the marriage.

(5) the age, health, and physical condition of the parties;

(6) fault in breaking up the marriage;

(7) the benefits the innocent spouse would have received had the marriage continued; and

(8) probable need for future support.

*Patt,* 689 S.W.2d at 507.

■ The Husband contends the trial court abused its discretion by holding him solely accountable for the majority of the existing liabilities and then failing to award him sufficient liquid assets. To support his argument, he refers us to *McKnight v. McKnight,* 535 S.W.2d 658, 660 (Tex. App.—El Paso 1976), *rev'd on other grounds,* 543 S.W.2d 863 (Tex.1976), and *Haggard v. Haggard,* 550 S.W.2d 374, 378 (Tex.App.—Dallas 1977, no writ).

We agree that the two cases support the premise that a trial court's failure to award sufficient liquid assets to one spouse could constitute an abuse of discretion in certain circumstances. *Haggard,* 550 S.W.2d at 378; *McKnight,* 535 S.W.2d at 660. We do not agree, however, that the circumstances in this case demonstrate an abuse of discretion.

The Husband's monthly payments, covering all liabilities, excluding the operation of his business and his payments to the Wife, will total approximately $48,000 a year. Even using the lowest average from 1986 to 1988 (omitting the estimated after-tax income for 1989 which was not based on any records), the business had an after-tax average income of $64,174.[4]

We overrule point of error four. We note that in reversing the case for the trial court to make a proper evaluation of the business, the trial court will necessarily make a new division of the property.

### 4. Unequal division as punishment

■ In point of error five, the Husband argues the trial court abused its discretion by ordering an unequal division partly based on its intent to punish him for his "admitted and unrepentant" fault. Fault may be considered by the trial court when dividing the community estate. The division, however, should not be a punishment for the spouse at fault. *Young v. Young,* 609 S.W.2d 758, 762 (Tex.1980).

■ The trial court found that "an unequal division is mandated in this case because of the large disparity in the earning capacities of the parties, and because of the admitted and unrepentant fault" of the Husband. The Wife argues that the mention of unrepentant fault was not to justify punishment but to explain that the Husband's unrepentant admission of adultery is what caused her to lose hope in the marriage. If the Husband had shown any sign that he would stop his extra-marital activities, she would have tried to put the marriage back together.

We are unable to say that the trial court clearly abused its discretion. We are not prepared to interpret the language used, "admitted and unrepentant fault," as intending punishment.

We overrule point of error five.

### 5. Homestead lien

In point of error three, both parties agree the trial court erred in entering a judgment which placed a lien in favor of the Wife on the homestead greater than her awarded community interest in the homestead.

Each spouse's community interest in the homestead was worth $23,000. As part of the property division, the Husband was required to give a note for $88,750 secured by a deed of trust against *all* of the assets awarded to the Husband, which included the homestead.

■ Although a lien may be placed upon a spouse's homestead to secure payment of an amount awarded to the other spouse, the amount secured is limited to the amount of the homestead interest awarded to the other spouse. *Wren v. Wren,* 702 S.W.2d 250, 252 (Tex.App.—

---

**4.** If we use the four-year average, which includes the after tax income estimate of $116,- 000, the average for the four years is $68,846.

Houston [1st Dist.] 1985, writ dism'd); *Wierzchula v. Wierzchula*, 623 S.W.2d 730, 732 (Tex.App.—Houston [1st Dist.] 1981, no writ).

### Summary

■ Having sustained points of error one and two, regarding the valuation of the business, we remand to the trial court for a hearing to determine the value of the business using the proper method of valuation. In addition, we modify the judgment of the trial court so that the deed of trust on the homestead property secures only $23,000.

DUNN, Justice, concurring and dissenting.

I concur with the majority on points of error four, five, and six. On points of error one and two, I respectfully dissent.

In his first point of error, appellant contends the trial court erred in finding that the value of the community's business was $100,000 because the finding was an abuse of discretion, was supported by no evidence, and was against the great weight and preponderance of the evidence. In his second point of error, appellant asserts the trial court erred in admitting the testimony of the wife's expert regarding the value of the community's business.

In points of error one and two, regarding the valuation of the parties' business, appellant asserts that the wife's expert, a certified public accountant, did not use an acceptable method of valuing the parties' business because the method he used was based on the earnings of the husband.

The facts indicate that the wife called a certified public accountant and qualified him as a business appraiser without objection. I note that certified public accountants have been held qualified to testify about the value of businesses. *Taormina v. Culicchia*, 355 S.W.2d 569, 574–75 (Tex. Civ.App.—El Paso 1962, writ ref'd n.r.e.).

The expert determined the income from the businesses, Respiratory Care Services and Home Care Services, for the four previous years by using the income reported on Schedule "C," which was attached to the parties' joint income tax returns for the years 1986, 1987, and 1988. He then averaged the income for the four years, with the fourth year, i.e., 1989, being based on the average of the past three years. The record indicates there was testimony that for the fourth year the businesses earned $116,000, which was higher than the three previous years. The expert stated that he also took into consideration the financial records of the businesses for the years 1988 and 1989. These records were properly introduced into evidence and are before this Court. The expert testified that he determined the value of the businesses based on the projected earning capacity of the enterprises and "on a 20 year worked span." He testified that he used a conservative return rate of 8%, and "based on the standard value of the dollar today and based on the average earnings for the four year period I had available to me, I projected an estimate of value." In further explanation, he stated that he used an annuity value of the annual income of the businesses. When asked, "What type of method is this called?" He stated that, "It is based on the fair value, the present value, on an annuity basis of average annual earnings." At no time was there a reference to the earnings of the individual parties, only the earnings of the businesses. The focus on the time span of 20 years was based on the husband's possible work years, i.e., from 40 to 60. He stated that he chose this method because he felt that these were service-oriented businesses, and ones in which the "assets were not of any consequence," and that he based his entire opinion on the earning capacity of the businesses. The expert agreed that this was not the only way to determine the value of a business, but that his method was an accepted method of valuing businesses. He stated, "This particular business is not assets intensive. The primary value of the business is the earnings that the business can generate." He testified that he took into consideration the contracts between the business and the hospitals and the clientele of the businesses.

Texas courts have held that "once an expert is qualified, his opinion should be admitted no matter how ridiculous it may

appear to the trial court." *United States Fire Ins. Co. v. Stricklin,* 556 S.W.2d 575, 580 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Any variances or discrepancies in the testimony itself do not relate to its admissibility, but are matters relevant to the weight to be given the testimony for evaluation by the trier of the facts. *Simpson v. Glenn,* 537 S.W.2d 114, 118 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).

Whether the entity is a sole proprietorship, partnership, or corporation makes little difference in terms of methodology in valuing a business. The appropriate technique varies between a service-oriented business, in which an investor looks primarily to the earnings of the business, and an asset-oriented business, in which an investor looks at assets as well as earnings.[1] There was evidence in this case, as demonstrated by Schedule "C" of the tax returns of the business, of the income that the businesses received for the years 1986, 1987, and 1988, and there was testimony that the income for the year 1989 exceeded each of these past years. The expert testified that he used this information as well as the discounted future earnings of the businesses on which to base his opinion of their value. He stated that the discounted future earnings method is the forecast of the future earnings of the business that would be available to a hypothetical purchaser (in this case the husband), then an appropriate discount rate will be applied to arrive at a business' present value. Even though the projections used by the expert are easily challenged, due to their inherent subjectivity, this goes to the weight of the evidence and must be left to the trier of fact. *Simpson,* 537 S.W.2d at 118.

Based on the foregoing, I would find appellee's objection to the methodology for determining the value of the business, which was chosen by the wife's expert in expressing his opinion, goes to the weight of the evidence, and the court did not err in overruling the husband's objection.

I would overrule appellant's second point of error.

Notwithstanding the above, the trial court had sufficient evidence of the value of the tangible assets of the business to support the $100,000 total value he placed on the business. There was testimony that Respiratory Care Services had tangible assets valued at approximately $56,000. This value included: 1) the agreed value of the Ford pick-up at $7,500 (being depreciated as a business asset); 2) the value of the airplane at $13,000; 3) the value of the hangar at $4,500 (this value is based on testimony of the husband that it was owned by the business, and that if he died he directed that the hangar be sold to "Bobby" for $4,500); 4) a certificate of deposit in the amount of $4,000; 5) equipment worth $9,800.00; 6) accounts receivable in the amount of $11,454.00; 7) a bank account worth $2,088. The respiratory therapy agreement, dated May 1, 1986, admitted in evidence between "Respiratory Care Services, a sole proprietorship," and the Columbus Community Hospital was signed by the husband on behalf of the business. This contract was introduced as an asset of the business; however, there was no actual value placed on the contract. The contract provided for a monthly fee to be paid to Respiratory Care Services for service rendered the hospital at the approximate rate of between $5,000 and $6,000 a month for a period of three years, beginning May 1990 and ending May 1992. The contracts also provided that the fee schedule effective May 1, 1988, would remain in effect until the new fee schedule became effective.

Concerning the Home Care business, the evidence showed that there was equipment worth $7,400, accounts receivable in the amount of $1,100, a bank account worth $1,756, and a Camaro worth $1,600 (depreciated as a business asset). The total value of the business was approximately $12,000. In addition, there was testimony that there were retail agreements with customers in

---

1. Katherine A. Kinser & Diana Siegel Friedman, *Determination and Proof of Valuation and Proof of Valuation In a Family Law Case,* in State Bar of Texas Professional Development Program, How To Determine and Prove the Value of A Business H–4 (1991).

the home care business, on which no specific value was placed.

In addition to the above, the husband admitted, on cross-examination, that he had bought additional equipment in 1988 and 1989 that totaled approximately $17,600, and there was no evidence that these purchases were included in the list of equipment contained in his inventory.

Considering all the evidence contained in this record, the assets of the two businesses totaled approximately $85,000, excluding the contracts and rental agreements. Because one of the contracts, on its face, would produce more than $180,000 worth of income until 1992, I would find that there was sufficient evidence to support the $100,000 value the trial court placed on the business, without the trial court having to consider the value placed on the business by the wife's expert. I further note that the trial court made a specific finding that he did not include good will in determining the value. As a trier of fact, the trial court had the liberty to blend all the evidence and fix a value within the range of testimony. *McGee v. McGee,* 537 S.W.2d 94, 97 (Tex. Civ.App.—Amarillo 1976, no writ); *see Mata v. Mata,* 710 S.W.2d 756, 758 (Tex. App.—Corpus Christi 1986, no writ) (value should be within the range of values in evidence); *Morgan v. Morgan,* 657 S.W.2d 484, 490 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd).

I would hold that the court did not abuse its discretion in fixing a value of $100,-000.00 for the two businesses inasmuch as there was sufficient evidence to support the $100,000 valuation placed on the business by the trial court.

I would overrule appellant's first point of error.

I would affirm the judgment of the trial court.