683 So.2d 1140 (1996)
Merle M. BOYETT, Jr., Appellant,
v.
Eldis Raymell BOYETT, Appellee.
No. 95-720.
District Court of Appeal of Florida, Fifth District.
December 13, 1996.
*1141 George E. Adams of Adams, Hill, Reis, Adams, Hall & Schieffelin, Orlando, for Appellant.
Patrick A. Raley of Infantino and Berman, Winter Park, for Appellee.
GOSHORN, Judge.
Merle Boyett, Jr. ("the former husband") appeals the final judgment and order denying rehearing and/or new trial entered pursuant to a dissolution proceeding involving him and Eldis Raymell Boyett ("the former wife"). The former husband asserts that the trial court erred in (1) requiring him to pay the parties' Sears and appraisal debts and three fourths of the former wife's attorney's fees where it had substantially equalized their monthly incomes, (2) distributing his retirement plan in a manner that will entitle the former wife to benefit from the former husband's labor after the divorce, and (3) awarding the former wife $1,200 per month in permanent alimony. We find that the first two arguments have merit, and accordingly, we reverse in part.
The parties were married on August 20, 1960. At the time of the marriage, the former husband had been employed at the Orlando Utilities Commission ("OUC") for approximately three years and had continued to work at OUC during the marriage. He has a vested retirement plan with OUC, with an anticipated retirement date of September 1, 2001, his 62nd birthday. The present value of the benefit as of the valuation date, June 1, 1993, is $158,931.49, which would entitle the former husband to $2,860.86 per month beginning on the date of retirement. There is a two percent penalty per year for early retirement. If he took retirement on June 1, 1993, the former husband would collect $2,388.82 per month.
The parties owned four pieces of property: (1) a single family home in Groveland, Florida valued at $71,000 that is encumbered by a $37,000 mortgage; (2) eight acres adjoining the Groveland home valued at $36,000; (3) a single family home in Bithlo, Florida valued at $57,000, owned free and clear; and (4) forty acres in Lake County, Florida valued at *1142 $28,000 with approximately a $10,000 mortgage.
The trial court entered final judgment of dissolution, distributing the Groveland home and attached eight acres to the former wife and the Bithlo home and forty acres in Lake County to the former husband. Each party received approximately one half of the tangible personal property. In paragraph H of the final judgment, the court treated the former husband's retirement plan as follows:
1. Benefits accrued as of June 1, 1993 will be distributed 50% to wife and 50% to husband upon husband's retirement; and
2. Benefits accruing after June 1, 1993 will be distributed to wife under the following formula and the remainder to husband: 50% × (360 divided by [360 ÷ number of months from June 1, 1993 to date of retirement]);
The court also awarded the former wife $1,200 per month in permanent alimony, citing the factors listed in subsection 61.08(2), Florida Statutes (1993). Further, it required the former husband to contribute $10,000 of the former wife's $15,000 attorney's fees and, citing the former husband's superior earning ability, ordered him to pay 75 percent of the parties' Sears and appraisal debts.

1. Attorney's Fees and Sears and Appraisal Debts
The purpose of section 61.16, Florida Statutes (1993) is to assure that each party to a dissolution action can secure competent counsel. See Canakaris v. Canakaris, 382 So.2d 1197, 1205 (Fla.1980). The award is not based upon who prevails in the action, but rather, on the parties' relative financial circumstances. Seitz v. Seitz, 471 So.2d 612, 615 (Fla. 3d DCA 1985). Here, the former wife attempts to show that she is in a financially inferior position by asking this court, when comparing the parties' circumstances, as reflected in their respective financial affidavits, to reduce the former husband's monthly expenses by $688 because he is no longer required to make the monthly mortgage payment on the marital home. She then claims that this adjustment turns the former husband's $492.18 deficit into a net of $195.82 per month. However, to be fair, one must also consider the fact that the former husband now has a $1,200 per month permanent alimony obligation. In doing so, it is apparent that the former husband is in as equally poor financial situation as the former wife. Both parties admit that the trial court made a relatively equal distribution of marital assets, while unequally distributing the marital debts. Under these circumstances, this district, as well as others, has found that it is an abuse of discretion to require one party to pay the other party's attorney's fees. See Zulywitz v. Zulywitz, 473 So.2d 275, 276 (Fla. 5th DCA 1985) (stating that although the husband appeared to have a greater financial ability to secure counsel, after considering his monthly alimony obligation, his wife's $9,000 hospital bill that he was required to pay, and his lack of savings, the trial court erred in requiring him to contribute to his wife's attorney's fees, given the fact that she had some stock and savings); see also Gill v. Gill, 652 So.2d 1270, 1270 (Fla. 2d DCA 1995) ("When the trial court has made a truly equitable distribution of marital assets ... it is inequitable to diminish the award by requiring one party to pay the other's fees where both have substantially equal ability to pay.") (quoting Murray v. Murray, 598 So.2d 310, 312 (Fla. 2d DCA 1992)); Keaton v. Keaton, 634 So.2d 798, 799 (Fla. 4th DCA 1994) (declaring that "[w]hen the court places the wife in a financial position equal to her husband, she is not entitled to an award of attorney's fees") (citing Avery v. Avery, 548 So.2d 865, 866 (Fla. 4th DCA 1989)); Naugle v. Naugle, 632 So.2d 1146, 1147 (Fla. 5th DCA 1994) (finding that the trial court abused its discretion in requiring the former husband to pay the former wife's attorney's fees after equally distributing the marital assets and equalizing their incomes through the alimony award) (citing Ariko v. Ariko, 475 So.2d 1352 (Fla. 5th DCA 1985)).
We recognize that in making an attorney's fees award, trial courts are given broad discretion, and therefore, an appellate court will not reverse absent a showing that the trial court abused that discretion. See Ball v. Ball, 554 So.2d 629 (Fla. 4th DCA 1989). In the present case, however, the parties' relative financial circumstances following *1143 the final judgment demonstrate that the trial court abused its discretion in making the attorney's fees award. We therefore reverse the award. Likewise, the Sears debt and appraisal costs should be shared equally. Cf. Kimm v. Kimm, 650 So.2d 1119, 1120 (Fla. 5th DCA 1995) (reversing judgment where trial court equally distributed marital assets, but "erred in allocating practically all of the marital liabilities to the husband without any explanation...."). Although the trial court made its distribution because, in its view, the former husband had a superior financial position, the record demonstrates that the parties had relatively equal financial circumstances following the distribution.

2. Former Husband's Retirement Plan
In distributing the former husband's retirement benefits, the trial court utilized the approach taken in DeLoach v. DeLoach, 590 So.2d 956 (Fla. 1st DCA 1991). In that case, the appellate court approved of the "deferred-distribution" method of calculating retirement benefits to be paid to the nonemployee spouse upon the employee spouse's retirement. The court found that such an approach is useful where there are uncertainties that may affect the vesting or maturing of the pension. Under that approach, the trial court awards each spouse an appropriate portion of the pension payment as it is paid and retains jurisdiction to supervise the payment of benefits once the employee spouse actually retires and the benefits are finally distributed. Id. at 963. The court explained:
In those instances where it is difficult to place a present value on the pension or profit sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained by the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid "if, as and when" the pension becomes payable. The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid. The trial court, when using this method of allocation, will retain jurisdiction and award the non employee spouse some percentage of the marital interest in each payment.
Id. at 963 (quoting In re Marriage of Hunt, 78 Ill.App.3d 653, 34 Ill.Dec. 55, 63, 397 N.E.2d 511, 519 (1979)) (citations omitted).
Later, in Kirkland v. Kirkland, 618 So.2d 295, 297 (Fla. 1st DCA 1993), the First District expanded the approach in DeLoach to include a case involving a vested retirement plan. In that matter, the former wife argued that the lower court erred in awarding her 30 percent rather than 50 percent of her former husband's pension accumulated during the marriage. The former husband responded that the trial court should have retained jurisdiction and distributed the plan when he actually retired. Although the plan had vested, the First District reversed and remanded, noting that the trial court "failed to account for increases in the appellee's retirement benefits between the date of the dissolution and the date of retirement." Id. at 297. The court noted that "the employee spouse is permitted to share in the increases in retirement benefits due to post-separation efforts which were built on the foundation of marital effort." Id.[1]
The former husband primarily contends that the approach taken in DeLoach unfairly compensates the former wife for the former husband's efforts and labor following the dissolution. While this argument was considered and rejected in DeLoach and Kirkland, this court has consistently stated that "the valuation of a retirement plan should exclude any contributions made after the original final judgment of dissolution." Bain v. Bain, *1144 553 So.2d 1389, 1391 (Fla. 5th DCA 1990) (citing Carroll v. Carroll, 528 So.2d 931, 933 (Fla. 3d DCA), rev. denied, 538 So.2d 1255 (Fla.1988); Trant v. Trant, 522 So.2d 72, 73 (Fla. 2d DCA 1988); Howerton v. Howerton, 491 So.2d 614, 615 (Fla. 5th DCA 1986) (stating that it is improper to permit the former wife to share in the benefits acquired after the dissolution of the marriage by the former husband's continued employment at Southern Bell and contribution to retirement plan)). Because DeLoach and its progeny are inconsistent with this court's rulings regarding the valuation of a retirement plan, we disagree with the First District. Accordingly, we reverse and strike provision 2 of paragraph H of the final judgment which provides the former wife with pension benefits accruing after June 1, 1993. Further, we certify conflict to the Florida Supreme Court on this point.

3. Permanent Alimony
Trial courts have broad discretion in determining whether permanent periodic alimony is appropriate under the circumstances of each case. Absent a clear abuse of discretion, a reviewing court cannot substitute its judgment for that of the trial court. Murray v. Murray, 598 So.2d 310, 312 (Fla. 2d DCA 1992). Sub judice, the trial court correctly considered the factors enumerated in subsection 61.08(2), Florida Statutes (1993) in making its $1,200 monthly alimony award to the former wife. It recognized that the parties' marriage lasted almost 34 years; they were accustomed to living in a single family residence; the former husband has a superior earning ability; and the former wife's age and emotional state, which requires counselling, limited her ability to earn a living equal to that of the former husband. Although the former husband contends that the former wife's needs were met when she received $1,140 per month in temporary support during the pendency of this case, the record shows that there were many times she could not buy groceries. Because the record supports the trial court's permanent alimony award, and thus, no abuse of discretion has been found, we decline to disturb the award. In so doing, we note that our affirmance of the alimony award is without prejudice to apply for a modification at the time the former wife starts receiving the portion of the former husband's pension benefits.
In sum, we reverse the part of the order that requires the former husband to pay 75 percent of the cost of the former wife's attorney's fees and their Sears and appraisal debts. We disagree with DeLoach, reverse the retirement plan award, and certify conflict with the First District. Finally, the alimony award is affirmed.
REVERSED in part; AFFIRMED in part; and CONFLICT CERTIFIED.
HARRIS, J., concurring, with opinion.
GRIFFIN, J., concurring in part; dissenting in part, with opinion.
HARRIS, Judge, concurring:
The dissent raises the issue as to what extent one spouse should benefit from the post-dissolution employment efforts of the other spouse in the allocation of benefits from a fully vested, defined benefits pension plan when the true (present) value of the plan (monthly income) is determinable on the date of dissolution. Mr. Boyett has worked the requisite 30 years and thus is fully vested in his pension plan. The value of his pension is readily determinable as of the date the dissolution action was filed or the date of the final judgment.
The testimony indicates that the value of Mr. Boyett's pension as of the date of the dissolution action was $2,860 per month assuming Mr. Boyett was 62 years of age at that time. But Mr. Boyett was not 62. At the time of filing for dissolution he was considerably younger. Had he retired on that date, his pension would only generate $2,388 per month because it would be reduced by 2% for each year he was under 62.
Even though Mr. Boyett is fully vested and cannot increase his pension over the 75% of his qualifying income, he must refrain from seeking retirement benefits for several more years in order to receive the full $2,860 per month pension. And although he is not required to continue employment in order to receive full benefits when he reaches 62, if he *1145 chooses to continue to work for the same employer, by working the additional years his qualifying income may increase (and thus also his monthly benefit check) by virtue of his post-dissolution services.
The dissent urges that Mrs. Boyett should not only receive a share of the pension generated by Mr. Boyett's marital efforts, but also share in any increase in those benefits caused by his post-dissolution employment efforts. This is because her right to receive her interest in the pension is being delayed. The fairest solution, of course, would be for Mr. Boyett to merely "buy out" Mrs. Boyett's interest in the pension at the time of dissolution. That is, he should immediately start paying her $1,194 per month (one half of the "present value") as her share of the pension.[1] This would have the same effect on her as if he elected to retire on the date of the dissolution action. In this manner, the receipt of her interest in the pension is not delayed. Further, since she would be currently receiving this "income," Mr. Boyett's alimony obligations would be considerably different.
If, however, Mr. Boyett is unwilling (or unable) to purchase Mrs. Boyett's interest at this time, Mrs. Boyett should be compensated for the delay in receiving her share of the pension at the same rate that Mr. Boyett is compensated by delaying his retirement. This compensation should be in the form of adding 2% to the $1,194 for each year that she is delayed in receiving distribution of her share of the pension. By compensating Mrs. Boyett only at the rate of 2% per year for the delayed payment of the pension, she is limited to the current qualifying income and does not share in any increase in salary earned by Mr. Boyett after the dissolution. This would be the same as if Mr. Boyett chose to leave his current employment and sought work elsewhere without choosing retirement until he is 62. In such case, the interest of both Mr. and Mrs. Boyett in the pension plan would increase by 2% per year.
It seems only fair that any increases generated by Mr. Boyett's post-dissolution efforts should be his. While it is true that his subsequent employment might increase his pension payments "based on the foundation of marital effort," this should be considered merely an incident of the fact that the pension was derived from his past employment. This seems fairer than to say that Mrs. Boyett can continue to accrue marital property long after the marriage is dissolved.
Since I think the majority opinion reaches this result, I concur.
GRIFFIN, Judge, concurring in part; dissenting in part.
I respectfully dissent from the majority's ruling on the issue of equitable distribution of the pension. The relevant facts are not in dispute. Mr. Boyett had been employed by OUC for approximately three years when the parties married in 1960. They divorced in 1994, after thirty-four years of marriage. As of the time of the filing of the petition for dissolution on or about June 1, 1993 ["the filing date"], Mr. Boyett was already fully vested in OUC's defined benefit plan and his own contributions had ceased. He had reached the maximum salary percentage for benefit calculation. As of the filing date, the present value of his pension benefit was $158,931.49, or $2,860 per month; however, he is unable to draw his pension until the year 2001, the year he reaches age 62, without incurring a substantial penalty. Thus, if Mr. Boyett were actually to retire as of the filing date, his pension would have yielded only $2,388.82.[1] Significantly, Mr. Boyett does not have to retire at 62; he may continue to work.[2]
*1146 The amount at which the appellant urged below the court should value the pension was $2,388.82. This was clearly wrong and the court correctly rejected appellant's theory. Appellee's position, relying on DeLoach v. DeLoach, 590 So.2d 956 (Fla. 1st DCA 1991) and Kirkland v. Kirkland, 618 So.2d 295 (Fla. 1st DCA 1993), was that the lower court had the discretion to value appellee's interest in the pension as of Mr. Boyett's (then unknown) retirement date using the formula set out in DeLoach. This was an appropriate thing for the court to do under the circumstances. First of all, this is a defined benefit plan, not a defined contribution plan. This $158,931.49 worth of pension benefits, along with some real estate, was the principal asset of the marriage and it was subject to equitable distribution. The problem, of course, was that Mr. Boyett was not in a position to make an equitable distribution to appellee of her presently valued one-half share of the pension. Instead, her equitable distribution was inextricably bound up with Mr. Boyett's own pension interest and has been turned into a contingent future expectancy. This asset is not only not subject to her control or ability to grow the asset but is subject to the control and decision-making of her former husband. It is wrong merely to presently value such an asset for equitable distribution when it cannot presently be distributed and make no adjustment for the delay.
The lower court was made aware of the value of the pension and the monthly benefit as of August 1994, a date much closer to the final hearing than the filing date. This fourteen-month difference added approximately three hundred dollars per month to the payable benefit. The only variable to which the increase was attributable was Mr. Boyett's salary. Because of his thirty-year fully vested pension entitlement (fifty percent of which was appellee's), as Mr. Boyett's salary rose, so increased the pension. We do not know if Mr. Boyett's salary increase was attributable to Mr. Boyett's efforts or whether it was attributable to the cost of living, but it does not matter. Though the post-dissolution salary increases were Mr. Boyett's, the consequent increases in the jointly held monthly pension payment were properly jointly shared in accordance with the percentages described in DeLoach.
The majority's rejection of DeLoach based on prior decisions of this court is puzzling since DeLoach is really not inconsistent with those decisions. At issue in DeLoach and in this case is the application of deferred benefit sharing. The cases cited by the majority do not address that issue. In fact, the case which appears to be the source of the law of this district, Howerton v. Howerton, 491 So.2d 614 (Fla. 5th DCA 1986), is a good one to compare with the case at hand because they both deal with a vested, non-military pension. In Howerton, the lower court had made no valuation of the pension as of the dissolution but simply awarded fifty percent of whatever benefit would be paid at retirement. Relying on an Illinois case, In re Marriage of Frazier, 125 Ill.App.3d 473, 80 Ill.Dec. 838, 466 N.E.2d 290 (1984), the court made the unremarkable observation that the distribution under review would have the wife sharing in benefits acquired after the dissolution. The whole point of DeLoach is to articulate methodologies for doing exactly what this court ordered in Howerton compliance with the dictates of Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986). Significantly, DeLoach relied on a different Illinois case, In re Marriage of Hunt, 78 Ill. App.3d 653, 34 Ill.Dec. 55, 397 N.E.2d 511 (1979). A comparison of Hunt and Frazier reveals that Hunt is the relevant authority. Frazier was not a pension case. Frazier didn't even have a pension. The issue in Frazier was how to place a value on his State Farm Insurance Agency for purposes of current equitable distribution of the agency as marital property. The Frazier court simply held that the use of the discounted present value of the agency's future stream of earnings was an improper means of valuing the business because it effectively classified as marital property the results of respondent's future efforts to maintain his current accounts. 80 Ill.Dec. at 841, 466 N.E.2d at 293. If this case dealing with valuation of a business *1147 for current equitable distribution is the source of the rule in our district pertaining to deferred equitable distribution of vested pension benefits to be received in the future, then it should be revisited in line with more relevant case law.[3]
The excellent opinions of the First District Court in DeLoach and Kirkland demonstrate why this court is wrong to require that the valuation of the marital pension to occur no later than the judgment, even though distribution will not occur then. There is no such requirement in Chapter 61. See § 61.075(6), Fla. Stat. (1995). See also Robinson v. Robinson, 652 So.2d 466 (Fla. 1st DCA 1995). To the contrary, the unfairness would lie in forcing appellee to retain her principal marital asset in the pension and yet refuse to recognize that she has any interest in the only way in which that type of asset can increase in valuethe rise in monthly payable benefit. If equitable distribution of a vested pension is to be distributed so that the eventual monthly benefit is shared rather than the value of the asset paid out, then participation by both owners in the pension's growth is the only proper way to treat the asset. DeLoach, Kirkland. The lower court's action was not only well within its discretion, it was the only fair thing to do. I would affirm on this issue.
NOTES
[1] The First District again cited DeLoach with approval in a case involving a vested retirement plan. See Robinson v. Robinson, 652 So.2d 466, 467 (Fla. 1st DCA 1995) (finding that the trial court erred in denying appellant any interest in her husband's vested retirement plan and remanding "for further consideration according to the method set forth in DeLoach").
[1] This is very close to the amount the court has ordered him to pay in the form of alimony.
[1] In addition to my many other quarrels with the majority opinions, the insistence on valuing the pension as if Mr. Boyett had retired early on the filing date, thus subjecting him to the penalties for doing so, is a basic error. The record is clear that he did not retire as of that date and that the correct present value of the pension does not and should not include such a penalty. The suggestion that a waiver of the early retirement penalty to Mrs. Boyett is adequate compensation for having her principal asset involuntarily converted to a contingent future interest in her husband's pension is incorrect.
[2] The concurring opinion, in offering a waiver of the two percent penalty as compensation for the delay in payment, appears not to consider that the penalty expires at age sixty-two but retirement and the attendant receipt of the pension benefit may not occur until much later.
[3] It is worth nothing that this court has already enthusiastically embraced DeLoach as the vehicle for valuing a non-vested plan. Vaccaro v. Vaccaro, 677 So.2d 918(Fla. 5th DCA 1996). The majority's rejection of DeLoach in the context of a vested pension is illogical since the majority's stated basis for its rejection of DeLoach in this case would be the same for both vested and nonvested pensions. See Kirkland.