650 So.2d 1119 (1995)
Richard M. KIMM, Appellant,
v.
Patricia M. KIMM, Appellee.
No. 94-1086.
District Court of Appeal of Florida, Fifth District.
February 24, 1995.
Richard M. Kimm, New York, pro se.
Alton G. Pitts, Orlando, for appellant. Jeff B. Clark of Jeff B. Clark, P.A., Orlando, for appellee.
HARRIS, Chief Judge.
This case involves the dissolution of a thirty-four-year marriage. A few months prior to filing this action for divorce, Richard M. Kimm left his employment paying him in excess of $100,000 per year and took up residence with his girlfriend in another state.[1] There he formed a consulting firm that generated deposits of $65,000 in its first year. Although Mr. Kimm urged at trial that all but $21,600 of these deposits was nonrecurring income, the trial court found that Mr. Kimm was not believable and, in fact, had an income of at least twice the amount claimed. We find the court's alimony award to be within its Canakaris discretion.
We reverse that portion of the final judgment, however, that distributes the marital assets and liabilities. Section 61.075, Florida Statutes (1993) provides:
In a proceeding for dissolution of marriage ... the court shall set apart to each spouse that spouse's non-marital assets and liabilities, and in distributing the marital assets *1120 and liabilities between the parties, the court must begin with the premise that the distribution should be equal unless there is justification for an unequal distribution based on all relevant factors .. . (Emphasis added.)
Although in our case, the court did a good job in distributing the marital assets equally, it erred in allocating practically all of the marital liabilities to the husband without any explanation. On remand, the court shall determine the total amount of marital debt (including the payments on the Mercedes) and, unless the court can articulate appropriate reasons to do otherwise (see section 61.075(a)-(j)), evenly distribute the marital liabilities by reallocation of assets or otherwise.
AFFIRMED in part; REVERSED in part and REMANDED.
GRIFFIN, J., concurs.
PETERSON, J., concurs in part; dissents in part, with opinion.
PETERSON, Judge, concurring in part; dissenting in part.
I concur with the majority that review by this court is hampered by the absence of a finding of the amount of marital debts for which the husband was made solely responsible. The absence of that finding makes impossible a review of a plan of equitable distribution. Neither of the parties' briefs have summarized the record in order to assist us in the determination of the total debts and our review of the record has not satisfied our quest. Perhaps the state of the record is the basis for the trial court's omission.
But I would remand for a further reason. The final judgment awards to the wife permanent alimony of $1000 per month. Until the marital home is sold, the husband in addition must make payments on two mortgages covering the marital home, totalling over $2000 per month. When the house is sold,[1] the alimony increases from $1000 per month to $2000 per month. Although the amount of alimony is substantial, I cannot determine the amount of income that the trial court found the husband to have earned. While the trial court found that the husband's financial statement revealed gross earnings of $21,600 per year, the final judgment stated:
... Although [husband] maintains that he is not earning significant income, deposits to his accounts were shown which are three times what husband said he made. The figures and explanations offered by the husband regarding his income and expenses simply do not compute.
While the trial court has the discretion to believe or disbelieve the husband's testimony explaining the gross deposits to his account, the amount that the court found to be the annual earnings of the husband should be stated with specificity in order to facilitate later modification for the benefit of the wife if the husband's income increases or for the benefit of the husband if the income decreases. We require this finding when income is to be imputed and should require no less when the only testimony reflecting the salary is disbelieved. Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994).
The record reflects that 1993 deposits to the husband's account totaled $65,398.36. The husband gave the following explanation for the sources of those funds:

 salary $21,600
 joint savings 1,000
 life insurance 1,600
 credit card cash advance 14,000
 retirement fund 14,000
 cash borrowed from friend 7,300
 _______
 TOTAL: $59,500
 =======

The trial transcript reflects that the court's oral order to the parties at the conclusion of closing arguments was:
I think the ... [husband's income has] been understated here today. Deposits were shown for three times what he said he made. We'll take his word for it that he had $12,000 in expenses, and $14,000 that he got from cashing insurance, we've *1121 still got over twice as much as he said he made in income. That's  his figures are, simply not computing and no amount of shaking his head or stomping or patting his hand on his knee is going to change that fact.
This portion of the transcript conflicts with the final judgment and should be brought to the trial court's attention upon remand so that the parties, this court, and a judge who may entertain a later modification petition, can be certain as to the amount of earnings attributable to the husband in this dissolution. If the court intended the final judgment to reflect a finding that the husband's income was $43,200 per year, the requirement that he pay $36,348 to or for the benefit of the wife is inequitable. It may also be inequitable when alimony of $24,000 per year (56% of his total income) is required after the sale of the marital residence.
NOTES
[1] Although the court questioned the reasonableness of this voluntary termination, it did not impute the husband's income to be $100,000. Instead, the court found that the husband actually had income of approximately $43,000 per year. This was adequate income to meet the court's award of alimony.
[1] The husband will not receive a special credit for the $2000 per month payment on the marital home occupied by the wife. The proceeds from the sale of the marital home will be evenly divided.