677 So.2d 6 (1996)
Tyrone ADAMS, Appellant,
v.
Victoria ADAMS, Appellee.
No. 95-1001.
District Court of Appeal of Florida, Fifth District.
June 7, 1996.
Rehearing Denied July 29, 1996.
*7 Joseph Morrell, Orlando, for Appellant.
William A. Greenberg, Fern Park, for Appellee.
W. SHARP, Judge.
Tyrone Adams appeals from a final judgment of dissolution challenging the trial court's equitable distribution of marital assets and liabilities, the award of attorney's fees to his former wife Victoria, and the award to her of sole parental responsibility for the parties' two minor children. We remand the cause to the trial court for findings to explain and justify the equitable distribution.[1] We affirm the balance of the judgment.
The parties were married in 1975 and have three children. Two were still minors at the time of the final hearing. Victoria was the primary caretaker for the family, although she occasionally did some tutoring and teaching. Tyrone is a self employed gynocologist/obstetrician and was the family's primary breadwinner. Tyrone earned $135,000 in 1992, over $200,000 in 1991 and 1990 and Victoria believed he earned close to $400,000 in 1989. By the time of the final hearing, many of the marital assets had been repossessed or lost to foreclosure and, in addition, Tyrone's income (payable from his professional association to himself) had dropped to $3,858 per month.
The court found that Tyrone was responsible for his recent financial difficulties and that he intentionally dissipated marital assets. The court also found that Victoria was entitled to permanent periodic alimony but did not award alimony in light of Tyrone's present financial difficulties, reserving jurisdiction to do so in the future. The court granted sole parental responsibility of the parties' minor children to Victoria, subject to visitation with Tyrone, and ordered Tyrone to pay $1,316 per month child support.
The trial court then fashioned an equitable distribution "to accomplish an end that would usually be attained by an award of permanent periodic alimony." Earlier in the proceedings, a receiver had been appointed by the court to sell two lakefront lots. These lots were sold and yielded $214,823.72. This *8 amount was reduced by $1,488 for the fees of the receiver, $35,477.58 to pay an IRS lien, $2,477.58 for the school tuition of one of the parties' children and $12,338.25 for Victoria's attorney's fees and costs. The balance of the sales proceeds, $175,380.56, was awarded to Victoria. To ensure that Victoria received the entire proceeds from the sale of the lots, the court awarded her lump sum alimony of $51,781.41, payable in monthly installments of $1,000. Victoria was also awarded the furnishings in the marital home having a value of $8,000 and two of the parties' four jet skis having a value of $4,000.
Tyrone was awarded certificates of deposit in the amount of $120,000 and the parties' boat. The court noted that Tyrone had previously received insurance proceeds in the amount of $7,000 and a federal tax refund in the amount of $13,000 and ruled he was entitled to keep these monies as his separate assets. The court further noted that Tyrone had withdrawn $30,000 from certificates of deposit during the pendency of these proceedings. Tyrone was also awarded two jet skis having a value of $4,000.
On appeal, Tyrone argues that the court's distribution of marital assets caused him "to pass from prosperity to misfortune" and that there was no basis to award Victoria the bulk of the parties' remaining assets. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Rico v. Rico, 487 So.2d 1161 (Fla. 5th DCA 1986).
In distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors.[2] We recognize that the intentional dissipation of marital assets may be a relevant factor.[3] However, regardless of whether the distribution is equal or unequal, the distribution must be accompanied by specific written findings of fact as to the following:
(a) Clear identification of nonmarital assets and ownership interests;
(b) Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each asset;
(c) Identification of the marital liabilities and designation of which spouse shall be responsible for each liability;
(d) Any other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities.
§ 61.075(3), Fla.Stat. (Supp.1994).
Here the bulk of the parties' assets was lost to foreclosure and repossession. Of the remaining marital assets, Victoria was awarded the net proceeds (about $163,000) from the sale of the parties' two lakefront lots. Victoria was also awarded over $51,000 as a cash payment for the purpose of equitable distribution. See § 61.075(2), Fla.Stat. (Supp.1994). This cash payment was to compensate Victoria for monies taken out of the sale proceeds to pay for joint liabilities of the parties including school tuition, an IRS lien, and the receiver's fees and to pay for Victoria's attorney's fees. Tyrone was awarded the parties' boat and certificates of deposit. The value of these assets is not entirely clear as the boat, valued at about $300,000 by Victoria, was in the process of being repossessed. The parties owed about $272,000 on the boat and Victoria had testified that the parties pledged two certificates of deposit totalling $150,000 as security for the boat. We remand for clear identification of the value of the parties' assets and liabilities and for findings to advise this court of the rationale for this seemingly unequal distribution of all the parties' assets to Victoria and allocation of liabilities to Tyrone.
*9 Tyrone also challenges the award of attorney's fees to Victoria. Early in the proceedings, the court entered an order on temporary relief requiring Tyrone to pay $2,049 per month as child support, $1,500 per month as alimony and $15,000 as attorney's fees. The court allowed the temporary fees to be paid from marital assets. Tyrone liquidated $30,000 from certificates of deposit but did not pay the attorney's fees. Instead, Tyrone paid $10,000 in back office rent and $14,000 to $16,000 for payments and insurance on his boat. Tyrone only paid $5,000 to $6,000 to Victoria as child support. By the time of the final hearing, Victoria testified that she was supposed to have received about $23,000 from Tyrone pursuant to the temporary order but had only received about $9,000 in support. Because the temporary attorney's fees were not paid by Tyrone, the court ordered their payment from the proceeds of the sale of the two lakefront lots. We find no abuse of discretion. Canakaris.
Finally, Tyrone challenges the award to Victoria of sole parental responsibility of the parties' minor children and contends that the visitation schedule does not provide enough access to his children. The trial court found that Tyrone was a very controlling individual, that he had refused to accept the inevitability of the divorce, and that he harassed and stalked Victoria in an effort to intimidate her into dropping the dissolution action. The court also noted that Tyrone had failed to cooperate with the guardian ad litem, that he ignored his children's planned activities during his visitation times and that he constantly questioned the children about their mother's activities. Based on these considerations, the court found that shared parenting was not in the children's best interest and granted sole parental responsibility to Victoria, subject to visitation with Tyrone. See § 61.13(2)(b)2, Fla.Stat. (Supp. 1994). The evidence regarding custody and visitation was in dispute and thus we find no abuse of discretion in the court's rulings. See Regan v. Regan, 660 So.2d 1166 (Fla. 3d DCA 1995); Durham v. McNair, 659 So.2d 1291 (Fla. 5th DCA 1995).
AFFIRMED in part; REVERSED and REMANDED in part.
DAUKSCH, J., concurs in conclusion only.
HARRIS, J., concurs specially with opinion.
HARRIS, Judge, concurring specially:
Although I generally agree with Judge Sharp, I write to express my belief that when one is unable to continue payments on property (the waterfront lots and the boat) which was purchased during a period of extremely high earnings because of a downturn in his or her earning capacity, and due to these circumstances thereby suffers foreclosure of those assets, that individual is not guilty of "intentional dissipation" of those assets.
Further, it is inappropriate to award through equitable distribution an asset (the boat) that the court knows has previously been lost in foreclosure, before the judgment is signed.
NOTES
[1] See § 61.075(3), Fla.Stat. (Supp.1994); Finch v. Finch, 659 So.2d 1351 (Fla. 5th DCA 1995); Kimm v. Kimm, 650 So.2d 1119 (Fla. 5th DCA 1995); Ingle v. Ingle, 640 So.2d 223 (Fla. 5th DCA 1994); Plyler v. Plyler, 622 So.2d 573 (Fla. 5th DCA 1993).
[2] Lagstrom v. Lagstrom, 662 So.2d 756 (Fla. 4th DCA 1995); Ingle v. Ingle, 640 So.2d 223 (Fla. 5th DCA 1994); Lavelle v. Lavelle, 634 So.2d 1111 (Fla. 2d DCA 1994); Romano v. Romano, 632 So.2d 207 (Fla. 4th DCA 1994); McMonagle v. McMonagle, 617 So.2d 373 (Fla. 5th DCA 1993).
[3] § 61.075(1)(i), Fla.Stat. (Supp.1994); Huntley v. Huntley, 578 So.2d 890 (Fla. 1st DCA 1991); Wood v. Wood, 490 So.2d 248 (Fla. 3d DCA 1986); Tuller v. Tuller, 469 So.2d 212 (Fla. 5th DCA 1985).